167 So.2d 363

**Leo STACK**

**v.**

**Mr. and Mrs. T. C. IRWIN et al.**

**No. 47112.**

July 1, 1964.

Rehearing Denied Oct. 7, 1964.

Howard W. Lenfant, Lenfant & Villere, New Orleans, for plaintiff and appellant.

Charles E. Cabibi, Ivy A. Smith, Jr., Dom C. Grieshaber, New Orleans, for defendants and appellees.

SANDERS, Justice.

The plaintiff, Leo Stack, instituted this suit to rescind a contract to purchase the residence of the defendants, Mr. and Mrs. T. C. Irwin, on the ground that the residence contained latent defects of a serious nature. Made defendant also was Mrs. Gertrude Gardner, Inc., the real estate agency that negotiated the contract. Among the complaints in the petition were a defective foundation, a break of the foundation slab, cracks in the floor and walls, water seepage into the house, a warping of the bedroom floor, and a defective air-conditioning system. The owners reconvened seeking specific performance of the contract. The real estate agency likewise reconvened seeking its commission and attorney fees under the contract.

After trial, the district court rejected the demand for rescission of the sales contract but granted quanti minoris, or a reduction in the price, in the sum of $1,800.00. While recognizing that the expert testimony established that the foundation slab was cracked, the court was of the opinion that the defect did not affect the structural strength of the slab. The price reduction included the cost of repair of the other defects. The court rendered judgment decreeing specific performance of the contract, subject to the reduction in price. The court made an award of $2,500.00 to the Irwins, as attorney fees. It rendered judgment in favor of the real estate agency in the sum of $2,-960.00 as its commission under the contract, payable out of the proceeds of the sale, and

in an additional sum of $300.00 as attorney fees.

The plaintiff appealed to the Court of Appeal. While agreeing with the district court that a reduction in the purchase price was proper, the Court of Appeal found the evidence insufficient to fix the amount of price reduction. The court set aside the judgment of the district court and remanded the case for the reception of evidence to establish the cost of repairing the defects, especially the cracked flooring and slab. La.App., 144 So.2d 648. The plaintiff applied to this Court for a writ of certiorari. This Court denied the application on the ground that the judgment was not "final."

On remand, the plaintiff produced the testimony of John R. Hughes, an experienced contractor and shorer. He testified that the crack in the foundation slab could be eliminated only by jacking up the residence and installing a new slab. He was of the opinion that a repair of the crack by filling would be ineffectual because it would reappear. He fixed the cost of installing a new slab at $23,419.20.

The district court concluded that it would be unreasonable to require the owners to bear the cost of installing a new foundation slab. The court, again, reduced the price of the residence in the sum of $1,800.00, including $1,000.00 to fill the cracks in the slab and terrazzo, $500.00 to repair the wood floor in the bedroom, and $300.00 to repair the air-conditioning system. It de-

creed specific performance of the contract to sell and awarded $2,500.00 to the vendors as attorney fees in this litigation. It rendered judgment in favor of the real estate agency in the sum of $2,960.00 as its commission and in the further sum of $300.-00 as attorney fees.

On an appeal taken by the plaintiff, the Court of Appeal reversed the award of attorney fees to the owners, but it otherwise affirmed the judgment. La.App., 158 So.2d 853. On application of the plaintiff, we granted certiorari to review the judgment of the Court of Appeal.

The facts disclosed by the record are these: On July 6, 1959, the plaintiff entered into a contract with Mr. and Mrs. T. C. Irwin to purchase their residence at 6302 Beauregard Avenue, New Orleans, for a price of $61,000.00, including $3,000.00 for the furniture. The act of sale was to be passed on August 1, 1960, but in the meantime, the plaintiff was to occupy the residence at a specified monthly rental. The contract contained standard provisions concerning merchantable title and realtor's commission. Stack made a deposit of $3,050.00 with Mrs. Gertrude Gardner, Inc., the real estate agency that negotiated the contract. He made an initial payment of $2,500.00 as the rent for the first seven months, beginning August 15, 1959. The remainder of the rent was paid at the rate of $400.00 per month until the plaintiff vacated the house on July 14, 1960.

A short time after Stack occupied the residence, he noted a number of defects. Among these was a crack in the terrazzo floor surface in the residence, a buckling of the wooden floors, and inadequacy of the air-conditioning system. Stack retained engineering experts to investigate the condition of the house. They reported that the foundation slab underneath the terrazzo was broken or fractured. Cracks in the floor and walls indicated that the residence had settled after construction. The engineers noted a break in the roof line. A differential in floor elevation of 2½ inches existed in the house. The elevation in the living room reflected a differential of 1¾ inches. These differentials, in the opinion of an engineer, were well beyond acceptable tolerances in good construction practice. Because the elevation of the patio slab was level with, or higher than, a portion of the house, water seeped into the house. Later, when the flooring was removed, moisture and decay were found in the wooden sub-flooring. On March 30, 1960, the plaintiff brought this suit to rescind the contract based on the defects in the residence.

The prime question raised is whether or not the defects are sufficient to warrant a rescission of the contract to sell.

Applying the Civil Code articles on redhibition, the Court of Appeal elected to reduce the price, rather than to rescind the contract.[1] It based its judgment upon a conclusion that the defects could be remedied and did not render the residence "worthless or unlivable." We do not agree with this holding.

██ ██ The codal articles on redhibition deal specifically with sales. These provisions set forth special rules relating to error in the cause of completed sales.[2] As we recently held, these articles do not apply to a contract to sell.[3] However, if at the time of the present contract, the residence contained a latent defect of such a nature as to induce error relating to the known, principal cause of the contract, then it is a proper one for rescission.[4]

Article 1825, LSA–Civil Code provides: "The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made."

██ ██ This codal provision, in our opinion, contemplates a defect in the thing to

1. LSA–Civil Code, Arts. 2520, 2543.

2. See Stracener v. Nunnally Bros. Motor Co., 11 La.App. 541, 121 So. 617, Rehearing denied 123 So. 911; 8 Tulane Law Review 178, 197–199.

3. Bornemann v. Richards, 245 La. 851, 161 So.2d 741.

4. LSA–Civil Code, Arts. 1823–1827, Arts. 1842–1845; 12 Louisiana Law Review 2, 9–14; 13 Tulane Law Review 362, 368–376.

be sold that renders it so imperfect that the contract would not have been made had the true facts been known.[5] If such a defect existed, the fact that it can be remedied does not defeat the rescission of the contract, for the rescission is founded upon a vice of consent.[6]

As reflected by the record, the determining motive, or principal cause, of the plaintiff was to secure a residence so free of substantial defects that no major repairs would be required. From the negotiations, the motive that dominated the plaintiff was either known to the other parties to the contract or must be presumed to have been known.

The residence involved here was approximately five years old at the time of the contract. The house was constructed on fill. The original architectural plans provided for a piling foundation, which would have cost about $900.00. For economy, the present owners eliminated the piling and used a reinforced concrete slab. The evidence reflects that other houses in the same area were built on such a foundation without unfavorable results. However, it does not appear that the soil compaction or condi-

tion under these houses was identical with that existing here.

■ Seeping water, a buckled floor, and an air-conditioning system that does not cool are unexpected shortcomings in a residence of this price range. However, in our opinion, the evidence reflects that the break in the foundation slab underlying the entire structure is a serious, latent defect. Especially is this true when it is attended by an abnormal variation in floor elevation. Such a break in the slab is quite different from the hairline, surface cracks in terrazzo floors, which frequently appear. To eliminate the break requires replacement of the slab, a major operation. To leave it makes difficult the repair of the floor cracks over it and increases, at least in some degree, the risk of moisture permeation. A reasonable inference arises that the contract would not have been made if the facts had been known. We find error relating to the principal cause of the contract that warrants a rescission of the contract and a return of the deposit.[7] The judgment below is manifestly erroneous.

Mrs. Gertrude Gardner, Inc. had a special agreement with the owners for 6% com-

---

5. LSA–Civil Code Arts. 1842, 1844, 1845. Compare Article 2520 dealing with redhibition: "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, *which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.*" (Italics ours.)

6. See Radalec, Inc. v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830; Fisher v. City Sales and Service, La.App., 128 So.2d 790; and Chas. A. Kaufman Co. v. Gillman, La.App., 142 So. 159.

7. LSA–Civil Code, Arts. 1825, 1826, 1881.

mission based on the rent paid in the event the sale was not consummated. That agency is entitled to judgment for the commission in the sum of $246.00, together with the contractual attorney fees in the sum of $300.00, against the defendants, Mr. and Mrs. T. C. Irwin.

For the reasons assigned, the judgment of the Court of Appeal, affirming the judgment of the district court, is reversed as to the main demand and judgment is rendered in favor of plaintiff, Leo Stack, and against defendants, Mr. and Mrs. T. C. Irwin and Mrs. Gertrude Gardner, Inc., rescinding and annulling the contract to buy and sell entered into between the parties on July 6, 1959. Judgment is further rendered in favor of plaintiff and against the defendants, in solido, in the sum of $3,050.00, with legal interest thereon from judicial demand until paid.

On the reconventional demand of Mrs. Gertrude Gardner, Inc., judgment is rendered in favor of plaintiff in reconvention against Mr. and Mrs. T. C. Irwin, in the sum of $246.00, with legal interest thereon from judicial demand until paid, and in the additional sum of $300.00 as attorney fees.

Judgment is further rendered rejecting the demands of Mr. and Mrs. T. C. Irwin as plaintiffs in reconvention.

All costs of court shall be paid by the defendants, Mr. and Mrs. T. C. Irwin.

HAMITER, J., concurs in the result, he being of the opinion that the litigation is governed by the pronouncements enunciated in Bornemann v. Richards, 245 La. 851, 161 So.2d 741.

167 So.2d 367