368 So.2d 763 (1979)
Arlis D. SCOGGIN, Plaintiff-Appellant,
v.
Leon W. BAGLEY, Defendant-Appellee.
No. 13777.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1979.
*764 Colvin, Hunter, Brown, Plummer & Means by David B. Means, III, Mansfield, for plaintiff-appellant.
Nelson, Hammons & Johnson by John L. Hammons, Shreveport, for defendant-appellee.
Before PRICE, MARVIN and JONES, JJ.
JONES, Judge.
Plaintiff, Arlis D. Scoggin, appeals a judgment rejecting his demands to invalidate a mineral top lease because of error and return to him the consideration paid for it. We affirm. The lease was granted by defendant, Leon W. Bagley, on December 5, 1977, covering 360 acres of land in DeSoto Parish, on which there was an existing lease dated December 8, 1972 for a 5 year primary term. The top lease was on a Bath Lease Form and contained the following typed provisions:
"This lease to become effective when present lease expires dated 12/8/72 (5 yrs.).
All monies paid are nonrefundable."
The basis for plaintiff's suit for cancellation is that he had been advised by the Heards, a father-son team of lease brokers, alleged to be defendant's agents, that the December 8, 1972 lease would expire by its own terms in the event no drilling commenced on the leased premises prior to the expiration of the primary term. Plaintiff testified he knew there were no drilling rigs available and considered it extremely unlikely that drilling would commence prior to December 9, 1977. Plaintiff contends the principal cause of his acquisition of the top lease was his firm expectation based upon representations of defendant's agents that absent the commencement of drilling upon the leased property prior to midnight December 8, 1977, that his top lease would become a valid, viable existing lease on the subject property. Though the plaintiff, defendant and the Heards were unaware of it, there was a Louisiana Conservation Commission order dated October 17, 1977, creating 16 production units for the Rodessa formation, including one 640 acre unit encompassing the 360 acres included in the top lease, and in which unit, though not on the top leased acreage, there was production. This had the effect of extending the primary term of the December 8, 1972 lease whether or not any drilling occurred upon the property subject to the top lease prior to the elapse of 5 years from December 8, 1972. These circumstances are the basis for plaintiff's contention that the top lease is invalid because of his error as to principal cause.
Plaintiff assigns as error the trial court's finding (1) that the defendant made no false representation to the Heards or the plaintiff that the only way the primary term in the 1972 lease would be extended would be by the commencement of drilling *765 activities prior to its expiration on December 8, 1977 (2) that the Heards were not defendant's agents and, therefore, their representation to plaintiff could not be attributable to him, and (3) that the plaintiff's lease right would come into existence with the expiration of the December 8,1972 lease, rather than finding the top lease invalid because of plaintiff's error as to the principal cause, this being his belief that the primary term of the 1972 lease would expire December 8,1977, in absence of drilling activity being commenced upon the leased property prior to that date.
In October 1977, Dugan Heard, a lease broker of DeSoto Parish, called defendant and inquired of him if he would consider top leasing the 360 acre tract involved in this litigation prior to the expiration of the December 8, 1972 lease. The defendant indicated he would consider leasing the tract for $30 per acre. Heard secured one potential lessor and brought him to defendant's home in November 1977, but this man refused to take the lease when defendant advised him that it was a top lease and that the lease to which it was subject might run out or might never run out. Dugan Heard contacted several other parties about the Bagley top lease and through one of these persons, plaintiff acquired the information of its availability. Plaintiff called Dugan Heard and met with him and his son, Joe Heard, in Mansfield on December 5, 1977. At this time the Heards advised plaintiff that the primary term of the 1972 lease would expire December 8, 1977, unless prior to that time drilling activities were commenced upon the leased premises. The Heards testified they were told this by defendant. Plaintiff gave the Heards instructions to go and secure the lease from Bagley and gave them the money to pay for it based upon a cost of $65 per acre. The Heards went to the home of Bagley in rural DeSoto Parish and there typed up the top lease and gave Bagley $30 per acre for it. Joe Heard, who prepared the lease, incorporated, at the request of Bagley, the clause in the top lease that it would not become effective until the expiration of the December 8, 1972 lease and that no money paid for it would be refunded. After Bagley executed the lease, the Heards returned to Mansfield with the lease which they delivered to plaintiff who had been waiting for them while they went to secure the lease. Plaintiff never discussed the top lease with defendant until after it was secured.
The defendant had told the Heards that he was only interested in a top lease if he had anything to lease. He pointed out to them the existence of substantial preparations for a well site on the leased premises and advised them of some litigation which delayed the drilling attempt. Defendant gave this information to the Heards as reasons why the lease might not expire on its anniversary date. Defendant testified that he urged the Heards to have an attorney check the public records to be sure of what he had available for a top lease. Defendant's warning to a potential lessor brought to his home by the Heards that the 1972 lease might run out or might never run out, resulted in the prospect refusing to proceed with the lease. Defendant testified in response to persistent cross-examination that he had never told the Heards that the only reason that the 1972 lease would not expire by its own terms would be the commencement of a well before the anniversary date. Defendant testified that "May" (apparently the owner of the 1972 lease) tried to get the leased acreage into a unit. Defendant's testimony and corroborating circumstances adequately support the trial judge's finding that defendant did not make the representations to the Heards nor to the plaintiff that except for intervening drilling activity the top lease would become viable December 9, 1977.
Plaintiff contends that the Heards were the defendant's agents and he is bound by their statements to plaintiff that the 1972 lease would expire in the event there was no drilling activity conducted upon land subject to it prior to the expiration of the primary term. Neither defendant, nor the Heards, testified there was any agency-relationship between them. Defendant *766 did not pay them anything from the money he received for the top lease. The Heards were given the money by plaintiff and by him sent to purchase the lease on his behalf. He gave them $65 per acre to make the purchase and they only used $30 per acre retaining the balance as their fee. The evidence established that plaintiff was unaware of what part of the $65 was retained by the Heards. One of the Heards testified they were to receive a 1/32 override for their services in securing the lease. These facts which could be construed to establish the Heards were the agents of the plaintiff adequately support the trial judge's finding that the Heards were not the agents of defendant and representation made by them to plaintiff cannot be attributable to the defendant.
Plaintiff's third assignment of error is directed to the trial court's refusal to invalidate the top lease because of the plaintiff's error as to the principal cause or motive in his execution of the contract. C.C. Art. 1823[1] recognizes that errors may exist with regard to all circumstances and facts related to contracts, but provides that it is only those errors related to a principal cause for making of the contract which will invalidate it. Based upon this Code Article, the plaintiff contends the contract of top lease is invalid for the reason he entered into it having as a principal cause for making the top lease the conviction that it would become a viable lease unless drilling activity was conducted upon the property subject to the 1972 lease before the expiration of the primary term on December 8, 1977.
The plaintiff urges that he was in error as to this principal cause for the reason that the October 17, 1977 unitization order, which was recorded on October 27, 1977, placed the top leased acreage into a unit with acreage where production was in existence and extended the primary term of the 1972 lease so long as production continued in the unit. Under these circumstances, plaintiff argues his error by the terms of C.C. Art. 1823 entitles him to have the top lease declared invalid and to a refund of the consideration paid for it.
C.C. Article 1826[2] and our jurisprudence provide a contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract where the other party knew or should have known it was the principal cause. Savoie v. Bills, 317 So.2d 249 (La.App. 3d Cir. 1975); Nugent v. Stanley, 336 So.2d 1058 (La.App. 3d Cir. 1976).
In the decision of Talley v. Blake, 322 So.2d 877, 879 (La.App. 1st Cir. 1975), the court stated:
"This is so in view of the fact that it is not every error, whether of fact or law, that will invalidate a contract. To do so it must be in some point which was a principal cause for making the contract, such as the motive therefor, LSA-C.C. Art. 1823, and in addition, the other party must be apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it, LSA-C.C. Art. 1826."
The words inserted in the top lease by defendant establish that he was motivated by one principal cause, and that was the execution of a top lease which would become effective upon the expiration of the 1972 lease. "This lease to become effective when present lease expires dated December 8, 1972 (5 yrs.)" These words inserted in the lease were placed there by defendant for the purpose of emphasizing to plaintiff that he was getting a top lease totally *767 subordinate to the 1972 lease. The defendant inserted the words "All monies paid are nonrefundable" in the top lease for the purpose of making it very clear to plaintiff that whatever may occur with regard to delay in the top lease becoming effective, that under no circumstances could the lessee expect a refund of the consideration paid for it.
Defendant testified that one of the reasons for his incorporating this language in the lease was because of the failure of the lease broker to bring the lessee to his home at the time the lease was executed. The defendant said because he didn't have the opportunity to personally discuss the top lease with plaintiff he included the additional clauses in the top lease in order that plaintiff would understand the lease he was acquiring was subordinate to the 1972 lease. The reasonableness of this testimony by defendant is established by the fact that he so clearly explained to the one potential lessee the hazards of the top lease until this prospect declined to proceed with the acquisition of the top lease.
The circumstances surrounding the execution of the top lease and the manner in which it was prepared establishes the defendant was not aware, nor under the circumstances could he have been presumed to have been aware, that a principal cause of the plaintiff's acquisition of the sublease was related to the primary term of the 1972 lease only being extended by drilling activity upon the property subject to it prior to December 8, 1977. The plaintiff's unilateral error as to the principal cause cannot serve to invalidate the top lease.
The plaintiff is an oil and gas man of some 30 years experience and prior to his obtaining the top lease viewed the area where the leased property was located. He, no doubt, saw the wells in the vicinity. The trial judge found as a fact that he knew the area was a "hot one" and he had been advised by the Heards of another potential lessee and this was a factor in causing his hasty acquisition of the lease. The bonus he paid for the top lease was substantially less than he would have paid had he been securing a lease not subordinate to an existent viable lease. Plaintiff was knowledgeable as to the various ways in which the term of an oil and gas lease could be extended beyond the period which was recited in the lease as the primary term. He had to be aware that production on any acreage in a unit created by the Louisiana Conservation Commission has the effect of extending the primary term of other leases covering other acreage in the unit though no producing well is located thereon. Plaintiff learned of the existence of the unit within 2 or 3 days after he acquired the top lease when he had the mineral title examined. As an experienced oil and gas operator he should have had this examination performed before he made the top lease purchase. The Conservation Commission order was recorded on October 27, and its existence could have been determined prior to that date by addressing an inquiry to the Louisiana Conservation Commission.
A unitization order could have been issued by the Louisiana Conservation Commission after plaintiff acquired the top lease on December 5th, and prior to December 9th, and in such event it would have extended the expiration of the primary term just as effectively as would the commencing of drilling activities during this period, yet plaintiff asserts he bought the top lease upon representation that it would blossom into a viable lease on December 9, 1977, subject only to the commencement of drilling activities. The top lease contract did not contain this limitation. On the contrary, it specifically pointed out that it was to be effective when the December 8, 1972 lease expired and that no money was to be refunded. When the Heards delivered the lease to plaintiff this added language to the Bath Form was pointed out to him and he accepted the lease.
Plaintiff will have a valid lease when the December 8, 1972 lease expires as is provided by the unambiguous provisions of his top lease. "Courts are not created to relieve men of their bad bargains made. Where a clause of a contract is clear and unambiguous, `the letter of it should not be disregarded *768 under the pretext of pursuing the spirit'." Lama v. Manale, 218 La. 511, 515, 50 So.2d 15, 16 (La.1950); Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (La.1970).
AFFIRMED at appellant's cost.
NOTES
[1] C.C. Art. 1823: "Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself."
[2] C.C. Art. 1826: "No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it (it was)."