416 So.2d 348 (1982)
William A. BISCHOFF
v.
BROTHERS OF THE SACRED HEART.
No. 12971.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearing Denied July 16, 1982.
Silvestri & Massicot, New Orleans, Frank Sloan, Andrew M. Weir, Metairie, for plaintiff-appellant.
Denechaud & Denechaud, Thomas A. Rayer, New Orleans, for defendant-appellee.
Before GULOTTA, GARRISON and BARRY, JJ.
BARRY, Judge.
Plaintiff appeals the dismissal of his lawsuit which sought damages for the alleged breach of his teacher's contract. The facts are not in dispute.
Plaintiff applied to teach religion at Brother Martin High School in New Orleans. Prior to his initial interview he filled out the school's "Application For Teaching Position", a form used by all applicants which made inquiry into the personal background by way of a "check off" format (as opposed to filling in blanks). Under the category of "Religion" plaintiff checked off "Practicing Catholic: Yes" and under "Marital Status" he noted "Married".
Mr. Bischoff was first interviewed by Brother Farrel, Chairman of the religion department, who recommended to the principal, Brother Brice, that plaintiff be hired to teach religion and a contract was signed on March 27, 1972. Prior to signing the contract plaintiff's religious practices and marital status were not discussed. A short time later Brother Farrel learned that plaintiff had been married in the Catholic church, divorced, and remarried, a situation contrary to the teachings of the Catholic church. As a result, on June 20, 1972, defendant withdrew the contract and plaintiff filed this suit for wages, mental anguish, damage to his career and attorney's fees.
The lower court found that the application misled the defendant because plaintiff, due to his expertise in Catholic doctrine, knew or should have known his answers would reasonably cause the Brothers to assume "his so-called present state of `marriage' was one validly contracted in accord with generally accepted principles of Catholic tradition and law." On this basis the Trial Judge determined the defendant was justified in relying upon plaintiff's assertions without obligation to inquire further. The court held there resulted an error of fact as to the person or character of the plaintiff which was a principal cause of the contract and plaintiff should have known this was a major consideration for making the contract. See LSAC.C. Arts. 1823, 1826. Hence, the contract was void ab initio as this error vitiated the defendant's consent.
*349 Plaintiff asserts in order for the defendant to vitiate its consent it is not sufficient to prove that plaintiff knew this information would have hurt his chances of being hired. Instead, he argues he must have known (or be presumed to have known) this knowledge would have precluded employment as a religion teacher and cites the following language from Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 (La.1979) at p. 992:
"Consent of the parties legally given is a requisite to the validity of a contract. La.Civil Code art. 1779. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent where it has been produced by error. La.Civil Code art. 1819. An error of fact proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none. La. Civil Code art. 1821. Errors may exist as to all the circumstances and facts which relate to a contract but it is not every error that will invalidate it. La.Civil Code art. 1823. To have that effect, the error must be in some point, which was a principal cause for making the contract and when there are several this principal cause is called the motive and means that consideration without which the contract would not have been made. Id. & art. 1825. No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it. La.Civil Code art. 1826. These articles of our Code simply mean that error in the determining motive, or principal cause, of a contract vitiates consent and invalidates the contract. Error as to a subsidiary motive has no effect upon the validity of the contract. Cryer v. M & M Manufacturing Co., Inc., 273 So.2d 818 (La.1972); Stack v. Irwin, 246 La. 777, 167 So.2d 363 (1964); Carpenter v. Skinner, 224 La. 848, 71 So.2d 133 (1954)." (Emphasis in original.)
Plaintiff claims it was not his obligation "to put his worst foot forward" and argues the following facts reveal he did not know employment would be precluded because of his marital status: there was no testimony showing Brother Martin had a policy prohibiting divorced persons from teaching religion; there were three divorced and remarried teachers at Brother Martin teaching other subjects; the application and contract were used for all teachers and the record clearly established a different standard for religion teachers. Three teachers, knowing plaintiff's background, recommended him to teach religion, and Brother Farrel testified one of the three told him he didn't think plaintiff's divorce would make a difference. Plaintiff testified he felt his personal experience would help rather than hinder his ability to be an effective religion teacher. He was supported by Father George Lundy of Loyola, who stated it was reasonable to check "practicing Catholic" and he would have hired plaintiff to teach religion despite his divorce.
Plaintiff also argues he did not misrepresent himself on the application by checking "married" and "practicing Catholic" because those answers were true and the Trial Judge erred by shifting the burden of inquiry from the employer to a confession by the applicant. Finally, he avers the trial court's statement that "professional candor should have compelled plaintiff to have made a disclosure of these facts" was error because plaintiff's only obligation was to inform defendant of his qualifications as a professional and not personal information unrelated to the job.
Defendant counters that plaintiff intentionally concealed material facts which if known would have been the cause or motive for denial of employment, and points to the importance of a religion teacher as a role model for the students. Defendant argues plaintiff must exemplify in his personal life the doctrines of the Catholic church: to teach religion is not merely a profession but a way of life, and if one's personal lifestyle *350 and teachings are in conflict it would cast serious doubt as to credibility.
Defendant points to the testimony of Brother Farrel where he related the following conversation with plaintiff:
"He said `Brother, if I had done that, would you have hired me?' And I said, `Probably not.' And he said, `That's the reason why I did not do it because if I had done it, I would have known I wouldn't have gotten hired.'"
Defendant relies on Ostrolenk v. Louise S. McGehee School, 402 So.2d 237 (La.App. 4th Cir.) writ denied, 404 So.2d 1259 (La. 1981) where a piano teacher failed to disclose on her application and in subsequent interviews that the previous year she had been discharged from a private school, and the court said at p. 240:
"This court, in Aetna Ins. Co. v. General Elec. Co., 362 So.2d 1186 [La.App.], observed that under Civil Code Article 1847(5) either an assertion of what is false or a suppression of what is true constitutes fraud if such action is designed to obtain an unjust advantage.
"Defendant's head mistress testified the contract was terminated because of plaintiff's omission of unfavorable facts and not because of the truth of anything stated against her. In view of her desire to obtain employment, plaintiff's omission to state facts unfavorable to her is both human and understandable. Nevertheless, this omission induced an error in defendant as to a principal cause of the contract by which plaintiff was hired and renders the contract null from its beginning.
"Particularly under the circumstances of the present case, we reject plaintiff's argument that her silence was merely a normal part of the routine of obtaining employment, and that the burden was upon defendant to obtain any factual evidence to determine her lack of fitness for the position. This argument likens the employment of a teacher for a private girls' school to an adversary proceeding."
Judge Samuel, in Ostrolenk, further cited 78 C.J.S. "Schools and School Districts," Sec. 187, p. 1043-44, as follows:
"A false representation of a material fact by the teacher, with knowledge of its falsity, with intent to induce the school authorities to enter into a contract of employment to teach, constitutes fraud sufficient to entitle the school authorities to avoid the contract."
Defendant suggests the facts of the instant case are more compelling than in Ostrolenk and the contract is invalid under LSAC.C. Arts. 1823 and 1826:
LSAC.C. Art. 1823.
Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.
LSAC.C. Art. 1826.
No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.
Ostrolenk is a strong case in defendant's favor; however, as pointed out by plaintiff's supplemental brief, the plaintiff in Ostrolenk was specifically asked about her latest professional activities and failed on two occasions to disclose her termination. This was an obvious attempt to mislead.
In summary, plaintiff argues: there was no misrepresentation on his application intended to deceive; and the "withheld" information related to personal background and not qualifications as a religion teacher and should have no bearing on the employment decision.
Defendant answers: plaintiff concealed, misrepresented or did not candidly disclose vital information which materially affected the employment decision.
All expert witnesses testified that, based on plaintiff's responses on the application, *351 the implication was that he was living in accordance with church doctrine. But, plaintiff's experts felt the employment form was inadequate and it was the employer's obligation to inquire further if the data sought was the basis for hiring. Defendant's experts felt the form plainly asked if plaintiff was validly married according to the Catholic church; further, with plaintiff's background he should have known the implication and relevancy of the questions.
We note that plaintiff was in a Dominican seminary for 6 years and had done extensive post-graduate work in theology and philosophy (master's degree) and was close to obtaining his doctorate. He had taught philosophy, theology and psychology at the college level.
At the time of his application plaintiff was 34 years old. He first married in 1964, separated in 1969, was divorced in 1971 and married his second wife in a ceremony performed by a fundamentalist minister in 1971. He and his first wife jointly instituted annulment proceedings which were finalized in 1976, four years after this incident.
The issue before us is not whether plaintiff is, in fact, a "practicing Catholic", but rather his subjective intent, i.e., did he intend to deceive the defendant by this assertion.
We find plaintiff intentionally concealed his marital status as revealed by his conversation with Brother Farrel. Plaintiff said he didn't divulge his marital history because he knew Brother Farrel would not have hired him under those circumstances. Plaintiff did not mention this telling conversation when he testified on direct examination and he was not recalled on rebuttal; hence, plaintiff's damaging admission remains uncontradicted. Plaintiff testified he was aware of Catholic dogma regarding divorce and we conclude, as did the Trial Judge, that the plaintiff's bad faith caused error and the contract was void ab initio.
The district court judgment is affirmed with plaintiff assessed all costs.
AFFIRMED.