465 So.2d 705 (1985)
Roger SIGSWORTH
v.
Jan B. GERNON and Latter & Blum, Inc.
No. 84-C-1412.
Supreme Court of Louisiana.
April 1, 1985.
Rehearings Denied May 2, 1985.
Barbara Treuting Casteix, Dawn M. Barrios, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, for applicant-plaintiff.
Howard R. Fussell, Jones, Fussell, Derveloy & Schoen, Covington, Mitchell J. Hoffman, McCloskey, Dennery, Page & Hennesy, New Orleans, for defendants-respondents.
WATSON, Justice.

*706 ISSUE
Should defendants refund the deposit plaintiff made in connection with an agreement to purchase a house because structural defects invalidated the contract? LSA-C.C. art. 1825.[1]

FACTS
On October 8, 1980, plaintiff, Roger Sigsworth, and defendant, Jan B. Gernon, executed a buy and sell agreement as to Gernon's house and lot at 222 Loop Drive, Slidell, Louisiana. Defendant, Latter & Blum, Inc., the real estate agent, received an $8,100 check for ten percent of the $81,000 price from Sigsworth. Prior to concluding the sale, Sigsworth discovered cracks in the slab under a bedroom carpet, one being a sixteenth of an inch wide and over eight feet long. The kitchen floor was uneven with a dip under the refrigerator. An expert in residential construction found other defects, including a two inch variation between the height of the slab in the center and the perimeter. Refusing to consummate the sale, Sigsworth requested that Ms. Gernon authorize Latter & Blum to return his deposit, but she refused.
At trial, Sigsworth's expert, Jeff Power, Jr., said the defects were serious and he would not have purchased the house. Power's opinion was supported by the testimony of William H. White, a consulting engineer, who had inspected the cracks in the slab, the irregular floor surface in the kitchen, and the two inch discrepancy between the center and perimeter of the slab. White said mortar had been replaced or resurfaced on the brick veneer, indicating a crack. The chimney at the rear of the house was slightly tilted, and the mortar between the chimney and the wall of the house had been re-worked. On the basis of his inspection, White would not have purchased the house.
Defendant's two experts, Willis Palmer and Ivan Borgan, made a cursory inspection of the house. Palmer did not look under the carpet for the cracks. Borgan only looked at the exterior of the house. On the basis of their limited observations, they testified that the house was structurally sound.
Sigsworth sued Ms. Gernon and Latter & Blum, demanding rescission of the contract, refund of the deposit, damages and attorney's fees. Latter & Blum placed the deposit in the registry of the court and reconvened for its six percent commission and attorney's fees. Ms. Gernon reconvened for the amount of the deposit, attorney's fees, and damage to the carpet allegedly resulting from inspection of the slab. Sigsworth's claim was dismissed. Ms. Gernon was granted the $8,100 deposit plus accrued interest, $1,000 in attorney's fees, and $463 for damage to the carpet. Latter & Blum was awarded a commission of $4,800, plus $1,000 in attorney's fees. The decision was affirmed in an unpublished opinion. Since it appeared that there was an egregious miscarriage of justice, a writ was granted. 458 So.2d 467 (La., 1984).

LAW
Precisely in point is Stack v. Irwin, 246 La. 777, 167 So.2d 363 (1964). The house in Stack had a break in the foundation slab, a two and a half inch differential in the floor elevation and other problems. Finding that the trial court was manifestly erroneous in failing to rescind the contract, Stack held that:
"the break in the foundation slab underlying the entire structure is a serious, latent defect ... it is attended by an abnormal variation in floor elevation. Such a break in the slab is quite different from the hairline, surface cracks in terrazzo floors, which frequently appear. To eliminate the break requires replacement *707 of the slab, a major operation. To leave it makes difficult the repair of the floor cracks over it and increases, at least in some degree, the risk of moisture permeation. A reasonable inference arises that the contract would not have been made if the facts had been known. We find error relating to the principal cause of the contract that warrants a rescission of the contract and a return of the deposit." 246 La. at 786, 167 So.2d at 366.

CONCLUSION
Sigsworth would not have entered into the contract to buy and sell if he had known the facts concerning the serious crack in the foundation slab, the difference in elevation between the center and perimeter of the slab, the repair to the brick mortar, the tilt of the chimney and the unevenness of the slab. Sigsworth had justifiable concern about the structural integrity of the house.
The trial court erred in two aspects. First, it was not necessary that plaintiff prove conclusively the slab was faulty, only that a reasonable buyer would not have signed the agreement to purchase knowing the facts about the house. Sigsworth produced such proof. Second, the trial court erred in concluding that the house was structurally sound on the basis of defendant's experts. One did not go inside the house; neither viewed the cracks in the slab, or found the defects listed by White, the consulting engineer. They made no serious effort to establish the structural soundness of the house. This is not a matter of credibility. The weight of the evidence preponderates in favor of plaintiff, who is entitled to rescission of the contract to purchase.
There is no authority to award damages claimed by plaintiff for loss of ability to acquire other property, mental anguish, or attorney's fees. As to defendant's claim for damage to the carpet, plaintiff had no other means of inspecting the slab than to pull back the carpet. The record does not indicate that the carpet was damaged intentionally or negligently, and damages will not be allowed.
For the reasons assigned, the judgment of the Court of Appeal is reversed, and judgment is rendered in favor of plaintiff, Roger Sigsworth, and against defendants, Jan B. Gernon and Latter & Blum, Inc., rescinding and annulling the contract to buy and sell entered into between the parties.
Judgment is further rendered in favor of plaintiff and against defendants, ordering that the deposit of $8,100 now in the registry of the trial court be paid to plaintiff, and that there be judgment in favor of plaintiff, and against defendant, Jan B. Gernon, for legal interest on the sum of $8,100 from the date of judicial demand, until paid. All costs of these proceedings are assessed against Jan B. Gernon.
REVERSED AND RENDERED.
LEMMON, J., concurs.
BLANCHE, J., dissents and assigns reasons.
MARCUS, J., dissents for reasons assigned by Justice BLANCHE.
DENNIS, J., dissents for the reasons assigned by the court of appeal.
BLANCHE, Justice (dissenting).
The principles of law that govern this case are found in Stack v. Irwin, but there the plaintiff proved that the break in the slab underlying the entire structure was a serious latent defect so as to induce error relating to the principal cause of the contract. Such is not the case here. A clear reading of the trial court record will show that plaintiff did not prove that the slab was defectivea fact which would have induced error as to the principal cause of the contract.
The record indicates that Mr. Sigsworth had been to the house twice prior to signing the purchase agreement and had not observed any defects on those occasions. After signing the purchase agreement, Sigsworth went to the home at night accompanied *708 by three men. He was able to enter the home without the presence of a Latter & Blum agent because the garage door had been left open. While examining the home, one of the men stated that the floor felt "funny." Sigsworth then folded the carpet back from the bedroom wall and found that the slab had several small fractures. He also noted an unevenness in the kitchen floor and a dip in the flooring where the refrigerator was located. There also appeared to be some type of overlay work done on the part of the slab in the garage.
In support of Sigsworth's claim that the house was defective, plaintiff called two expert witnesses. Jess Power, Jr. was qualified as an expert in residential construction. Most of his experience had come from homes located in the New Orleans area, as opposed to the Slidell area where the Gernon home was located. Power examined the house for over an hour and he prepared a written report. While examining the home, Power shot grades and determined that the front and rear perimeter were a maximum of two inches lower than the hallway leading to the bedroom. Power stated that most of the cracks he observed were simply hairline fractures but that some of the cracks may be cause for concern when coupled with the difference in elevation in the walls. However, he did not observe any defects in the exterior walls of the home and stated that without a coring sample, at a cost of $600.00, he could not be conclusive as to whether the slab was defective.
Mr. William White, a New Orleans consulting engineer also testified on behalf of Mr. Sigsworth. Mr. White examined the exterior, the roof and the interior of the house, including the attic. He found the exterior to be intact but he did note some areas where the mortar joints in the brickwork had been replaced and that the chimney had begun to slightly lean away from the house, but only about one-sixteenth of an inch. However, he found no irregularities in the sheetrock in the walls. As to the cracks in the slab, White stated he observed a crack in the left front bedroom floor approximately one-sixteenth of an inch wide and eight feet long. He also noted there was no vertical displacement of the walls but felt the one-sixteenth inch crack in the bedroom would indicate to him that something had moved and should be cause for concern. However, he could not state with any certainty when the slab had moved or if it would ever move again. While the majority is correct that both experts testified that they would not want to buy the home, the record shows that neither of them could conclusively say that the house was defective or in any way structurally unsound.
To support her claim that the house was not defective, Mrs. Gernon also produced two expert witnesses, Mr. Ivan Borgen and Mr. Willis Palmer, both of whom had extensive experience with concrete slabs in the Slidell area. Mr. Borgen testified that he had been involved with two to three hundred slabs in the Slidell area. Although Mr. Borgen limited his inspection to the exterior of the home, he found no evidence of movement in the slab. He also found no cracks in the brickwork or separations in the brick and eaves nor did he find any sagging rooflines or drainage problems, all of which, if present, would indicate the house was structurally unsound. He felt the Gernon home was as structurally sound as any home he had observed in Slidell.
Mr. Willis Palmer, who was particularly familiar with the slabs in the Country Club Estates, also found no defects in the Gernon home and stated that he had not heard of any problems with slabs in the Country Club Estates area at all. He likewise did not see any cracks in the brickwork or any cracks on the sheetrock inside. He found all the doors and windows would close properly and that the rooflines were not sagging.
Plaintiff had the burden of proving the house was defective. The trial judge found plaintiff had not proved the existence of defects of sufficient gravity to have induced error in the principal cause of the contract. Plaintiff's experts simply did not *709 say the house was defective or in any way structurally unsound. More importantly, it is well established that the factual findings of the trial court should not be disturbed absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). This is precisely the type of case where this rule should be rigidly applied. The majority's statement that this is not a case of witness credibility is incorrect. Even assuming that plaintiff's witnesses had stated the house was defective, defendant's experts were eminently more familiar with the Slidell area and the Country Club Estates where this home was located, testified that the house was not defective. The trial judge obviously accepted the testimony of defendant's experts as more reasonable. Absent manifest error, we should not disturb this finding and substitute our own. For these reasons, I respectfully dissent.
NOTES
[1] LSA-C.C. art. 1825 provided (prior to January 1, 1985):

"The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made."