BOWES, Judge.
Plaintiffs appeal a judgment of the district court dated February 5, 1986, in favor of defendant Hepplewhite Homes, Inc., dismissing plaintiff’s suit for damages occurring from alleged redhibitory defects. We affirm as follows.
Plaintiffs filed suit against Hepplewhite Homes, Inc., Mr. and Mrs. Anthony J. Cordes, and Albert J. Ward, Jr. in May 1977, alleging that their home, purchased from the Cordes’ and constructed by Hepplewhite, was unfit for use as a residence. Plaintiffs demanded recission of the sale and return of the sales price, plus reimbursement for improvements made.
On September 6, 1977, summary judgment was granted in favor of Albert J. Ward, Jr., dismissing the demand against him. After several pleadings not germane to our inquiry, trial was set for April 9, 1985. Following plaintiffs’ presentation of their case in chief, the trial court granted defendant’s motion for a directed verdict.[1] Subsequently, the court granted plaintiffs’ motion for a new trial on the merits, which was held on January 29, 1986. The court rendered the judgment of February 5, 1986, finding that the plaintiffs failed to prove their case by a preponderance of the evidence. No reasons for judgment were given.
Appellant’s sole specification of error is that the trial court committed manifest error in holding that plaintiffs did not prove their case by a preponderance of the evidence.
At trial, Mrs. Acosta testified that at the time suit was originally filed “my house was fine. It had some problems with a few tiles being cracked.... The house was fine then. It had a crack, a hairline crack going across the front.” Photographs dated June, 1978, depicted cracks in certain portions of the slab (the cracks were of indeterminate size, as the experts disagreed on this point). Mrs. Acosta stated that the cracks pictured in the photos which were taken over a period of at least six years had enlarged by the time of trial. However, Mrs. Acosta did not say how much enlargement had taken place since the photos were taken. By the date of trial, plaintiffs were pursuing only an action for reduction, rather than for recission.
Plaintiffs called Ronald Cressy who was accepted as an expert in civil engineering, *868 soil study and structural foundation. Mr. Cressy stated that he observed a crack in the slab that runs generally from the front to the back and that the crack had widened from the time he initially observed it, two years prior to trial. He stated that it “appears to be” a stress and structural crack, and opined that the foundation was initially defective either by design or by construction. While Mr. Cressy felt that the slab was defective, he could not pinpoint the cause of failure. We conclude from his testimony that Mr. Cressy drew his conclusions from observation, and did not perform any tests or take actual measurements.
Jerry Neimon, tendered as an expert in repairing foundations, felt that the cracks in the slab were caused from settling. He performed no tests either.
Defendant produced three expert witnesses. Herman Abry, an expert in slab and foundation repair, found no signs of any settlement problems. Levels of the slab were taken, and Mr. Abry found that the variances detected were within normal range and did not indicate sinkage; and that the house had not suffered structural damage from settlement. He felt that the cracks depicted in the photographs were not indicative of something sinking or opening up, and that the fissures which he observed “were not beyond the normal range of temperature or slight movement, which does not indicate that the house was sinking.”
Robert Anderson, a structural engineer, took measurements of levels with Mr. Abry and found that in no area was there any differential movement of more than, or even as much as, one-half inch, testifying as follows:
... And under normal circumstances, we wouldn’t anticipate a residential slab being poured any more or placed any more accurately than that. So, our conclusion was that there has been no noticeable differential movement associated with the slab and, certainly, nothing that would be considered significant from a structural standpoint. Also, our investigation of the slab indicated that there were no structural cracks associated with the slab or the superstructure or any brick work.
Minor cracks pointed out to him were due to temperature and shrinkage; there were no structural defects. He felt that, even though plaintiffs claimed to have been obliged to trim doors made uneven by settling, the door frames were not extremely skewed (which would have indicated sink-age).
Another defense witness, Paul Gelpi, a construction expert, viewed the house in 1977, 1983, and 1985; he found surface hairline cracks in the slab, which he characterized as a “cosmetic” problem. He further stated that the cracks were no worse in 1985 than they had been in 1977. At the time of his initial inspection, he also observed some cracked tiles, and some discolored floor tiles, caused by Mrs. Acosta’s attempt to remove paint (which she herself had spilled).
Louisiana Civil Code Arts. 2541 et seq. govern actions for reduction:
Art. 2541. Reduction of price for vices warranting redhibition
Art. 2541. Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.
The action for reduction is subject to the same rules and limitations as the redhibi-tory action. CC 2544.
Art. 2520. Redhibition, definition
Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
In Fraser v. Ameling, 277 So.2d 633 (La.1973), our Supreme Court interpreted these codal articles as applied to real estate:
A summation of the theory of the law is that the vendee seeks a reduction in *869 the purchase price in the amount expended to repair the defect or vice in the realty purchased because that defect or vice diminished the value to such an extent that had the vendee been aware of the defect or vice, the realty would not have been purchased. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959).
The existence of a redhibitory defect is a question of fact and the trial judge’s conclusion should not be disturbed in the absence of manifest error. Ball v. Ford Motor Co., 407 So.2d 777 (La.App. 1st Cir.1981).
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring Co. 283 So.2d 716 (La.1973)
Following the foregoing jurisprudence, we do not find that the trial judge committed manifest error in his determination that plaintiffs did not prove their case by a preponderance of the evidence. The court could reasonably have concluded that the defendant’s experts were more credible than plaintiffs’ in their finding that the slab in question was structurally sound and had not sunk or settled.
Given the evidence and the record as a whole, we must inevitably conclude that the court made such a determination and, although not expressly stated, such determination was well within the trial judge’s discretion.
Plaintiffs refer us to the case of Sigsworth v. Gernon, 465 So.2d 705 (La.1985), in which a cracked slab was found to be a latent defect sufficient to rescind an agreement to purchase. In Sigsworth, however, the plaintiff’s experts had verified a two inch variation in the height of the slab and established other evidence of a serious break in the foundation. We do not have any such proof of variations even approaching this magnitude in the present case and, as seen, the only measurements taken here militated in favor of defendant.
Further, no other defects alleged to have existed at the time of the sale and which plaintiffs attempted to prove at trial constituted defects within the meaning of Fraser, supra. It cannot be seriously contended that several broken bathroom tiles and some faulty grouting diminished the value of the house to such an extent that, had the Acostas been aware of them, they would not have purchased the house. Additionally, those and the remaining defects complained of, such as cracked walls and crooked and broken doors, were not “hidden” and were observable by simple inspection. If such problems were not caused by a faulty slab, as the trial judge apparently concluded, then they were simply not of such a nature as to give rise to a redhibi-tory action or action in quanti minoris.
For the foregoing reasons, we affirm the judgment of the trial court dismissing plaintiff’s suit. Appellant is taxed with costs of this appeal.
AFFIRMED.

. The only defendant before the court at this point was Hepplewhite; it appears from the record that service was never effected on Mr. and Mrs. Cordes.