STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-341


STEPHANIE LACROSS

VERSUS

CORNERSTONE CHRISTIAN ACADEMY OF LAFAYETTE, INC., ET AL.


**********


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NUMBER 2002-4294
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE


**********


BILLIE COLOMBARO WOODARD
JUDGE


**********


Court composed of Chief Judge Ulysses G. Thibodeaux, Billie Colombaro Woodard, and Oswald A. Decuir, Judges.


REVERSED AND RENDERED.

David C. Gibbs, III
Matthew J. Davis
Gibbs Law Firm
5666 Seminole Blvd., Suite 2
Seminole, Florida 33772
(727) 399-8300
COUNSEL FOR
DEFENDANT/APPELLANT:
    Cornerstone Christian
    Academy of Lafayette, Inc.


Randall M. Guidry
Durio, McGoffin, Stagg & Ackermann
Post Office Box 51308
Lafayette, Louisiana 70505
(337) 233-0300
COUNSEL FOR PLAINTIFF/APPELLEE:
    Stephanie LaCross

Larry Lane Roy
Dawn L. Morris
Jonathan L. Woods
Preis, Kraft & Roy
Post Office Drawer 94-C
Lafayette, Louisiana 70509
(337) 237-6062
COUNSEL FOR
DEFENDANT/APPELLANT:
    Cornerstone   Christian
    Academy  of  Lafayette,
    Inc.

WOODARD, Judge.

The Defendant, Cornerstone Christian Academy of Lafayette, Inc. (Cornerstone), appeals the trial court's determination that it breached a contract when it fired the Plaintiff, Stephanie LaCross, one of its middle school teachers, for lying on her employment application by claiming that she did not drink alcohol and for violating the school's standard of personal holiness. We find no breach by Cornerstone. Therefore, we reverse the trial court's ruling.

* * * * *

In February of 2002, Stephanie LaCross submitted an application for employment as a teacher with Cornerstone. On it, she answered "no" to "Do you use alcoholic beverages?" The application specifically stated: "Falsification may be the cause for dismissal."

On June 27, 2002, Cornerstone offered her a job to serve as one of its middle school teachers, and she signed an employment agreement to serve in that capacity for a two-year term. The employment agreement made it clear that Cornerstone is not only an institution of elementary education; it is a religious ministry and, as such, its teachers must adhere to a very strict standard of conduct. For instance, its contract includes the requirement that a Cornerstone teacher must "integrate all instruction with Biblical truth." Also, a Cornerstone teacher's employment is subject to the following condition: "The teacher/administrator will make personal holiness before the Lord a first concern, and spiritual fellowship with God's people a priority."

That summer, soon after Mrs. LaCross executed her teaching contract and before she assumed her teaching responsibilities, she and a female co-worker, who worked at the same law firm as Mrs. LaCross, went out with a single male attorney from another law firm to celebrate her new teaching job with Cornerstone. Later, Mrs. LaCross admitted that she had drank "four to five beers" that evening.

At the law firm, the next day, Mrs. LaCross was overheard laughing and discussing the details of her night out drinking. Upon hearing about Mrs. LaCross' evening out, Mrs. Cheryl Scurlock called Cornerstone's administrator, Mrs. Diana Case, to tell her that Mrs. LaCross cursed, drank alcohol to the point that she made a public spectacle, went out drinking with a man who was not her husband, and boasted

about her drunkenness the next day. Also, Mrs. Scurlock warned Mrs. Case that she would withdraw her grandchildren from Cornerstone if it did not maintain its standards for its teachers.

Mrs. Case met with Mrs. LaCross about these allegations. She admitted that she had been out drinking and confirmed the essential elements of Mrs. Scurlock's report. Following their meeting, Mrs. Case concluded that Mrs. LaCross clearly lied on her employment application and violated the ministry's standard of personal holiness. Shortly thereafter, Mrs. Case called Mrs. LaCross and informed her that Cornerstone's board of directors had terminated her employment with Cornerstone.

Mrs. LaCross filed suit against Cornerstone to recover $36,000.00 in wages ($18,000.00 per year), damages for mental anguish, and attorney fees resulting from Cornerstone's alleged breach of its contract. The trial court held that Cornerstone terminated Mrs. LaCross without just cause and awarded her $5,000.00 in attorney fees, $10,000.00 for her mental anguish, and $36,000.00 in wages.

Thus, we must determine whether Cornerstone's termination of Mrs. LaCross constitutes a breach of its contract with her, entitling her to damages.

*****

**ERROR**

"Error vitiates consent [to a contract] only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party."[1] When one party is in error and, thus, the error is unilateral, there is no meeting of the minds.[2] A unilateral error may invalidate a contract when an error exists as to a fact that was a cause for making the contract and when the party who *induced the error* knew or should have known that it was the cause.[3] (Emphasis added.)

Louisiana Civil Code Article 1950 provides:

---

[1]La.Civ.Code art. 1949.

[2]*Scoggin v. Bagley*, 368 So.2d 763 (La.App. 2 Cir. 1979).

[3]*Nugent v. Stanley*, 336 So.2d 1058 (La.App. 3 Cir. 1976).

2

Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, <u>or the person or the qualities of the other party</u>, or the law, <u>or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation</u>.

(Emphasis added.)  In addition, comment (d) to La.Civ.Code art. 1950, specifically, states that a party may obtain relief if s/he intended to contract with a certain person or a person of a certain quality or character and the other party lacked the intended quality or character.  Furthermore, "[e]ven when an obligation has multiple causes, error that bears on any one of them is sufficient to make the obligation invalid."

In the application, Cornerstone asked Mrs. LaCross the following question: "Do you use alcoholic beverages?  Yes or No.  If yes, to what extent?" to which she answered by simply circling "No."

However, during the trial, she admitted that she did drink:

> Q.      Do you drink regularly?
>
> A.      <u>I drink occasionally</u>.
>
>         . . . .
>
> Q.      There's  a question [in the application] that says:  "Do you use alcoholic beverages?"  Do you see that?
>
> A.      I do.
>
> Q.      And you responded:  "No."
>
> A.      Exactly.

(Emphasis added.)

Within the last paragraph of the application, which Mrs. LaCross signed and submitted to Cornerstone, it clearly states:

> To the best of my knowledge, the foregoing statements are complete and correct and no fact has been withheld that would adversely affect a decision to employ.  (Falsification may be the cause for dismissal.)

3

Given Mrs. LaCross' admission that she does drink and her failure to acknowledge that fact in her application when the application clearly stated that any falsification would be grounds for dismissal, Cornerstone contends that it was under no obligation to honor the employment contract that it subsequently offered to her. Specifically, it asserts that the uncontested facts establish that she lacked certain qualities and characteristics that the school sought, which she misled it into believing she had; therefore, an error concerning a cause exists and renders the contract void *ab initio* because, without her misrepresentations, Cornerstone may have never offered her the subject employment contract. We agree.

The fourth circuit has upheld the dismissal of a contract on these grounds even when there was no provision on the application which explicitly provided that falsification would be a ground for dismissal. In *Ostrolenk v. Louise S. McGehee School*[4] and *Bischoff v. Brothers of the Sacred Heart*,[5] it held that when the applicant misstates or fails to state facts, on the application, in an attempt to mislead the school administration, the contract of employment is invalid from its inception.

Like the plaintiffs in *Ostrulenk* and *Bischoff*, Mrs. LaCross induced school officials into believing that she possessed principles she really lacked. Moreover, Mrs. LaCross compounded her situation. Namely, there is a provision within her application which explicitly provides that falsification of the application is a ground for dismissal. However, not only did she lie about her consumption of alcohol, a material fact that induced an error, but, additionally, her signature, indicating that her answers and statements on the application were complete and correct when at least one was not, in and of itself, induced error.

The fact is that Cornerstone felt strongly that its employees possess certain principles, one of which concerned consumption of alcohol. But more importantly, it sought *honest* employees. It had a right to select its employees according to these standards and to dismiss them for failing to meet them.

---

[4]402 So.2d 237 (La.App. 4 Cir.), *writ denied*, 404 So.2d 1259 (La.1981).

[5]416 So.2d 348 (La.App. 4 Cir. 1982).

4

### *Was the Defense of Error Properly Raised?*

Mrs. LaCross's counsel believes Cornerstone waived its right to raise the affirmative defense of error when it failed to assert this defense in the pleadings. Certain defenses must be affirmatively plead to give the plaintiff fair and adequate notice of the nature of the defense.[6]

Louisiana Code of Civil Procedure Article 1005 provides:

> The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.

(Emphasis added.)

Cornerstone argues that it did affirmatively plead the defense of error in paragraph eleven (11) of its "Answer to Petition for Damages," even though it was not designated as an affirmative defense:

> The allegations of paragraph 11 of plaintiff's Petition for Damages are denied, save and except that prior to the start of the 2002 school year, Cornerstone, through its duly authorized representatives, learned that petitioner was not candid in her application for employment, and that lack of candor applied to certain important elements, including the use of alcohol, and other activities which indicated to Cornerstone that plaintiff did not, in fact, possess the desire and/or qualities to "make personal holiness before the Lord a first concern and spiritual fellowship with God's people a priority," as the contract, among other things, clearly indicated a teacher would do.

---

[6]*Hanks v. Wilson*, 633 So.2d 1345 (La.App. 1 Cir. 3/11/94).

This allegation sufficiently sets forth facts from which a legal conclusion of error is found.[7] Therefore, it meets the requirement for affirmative defenses provided in La.Code Civ.P. art. 1005. Namely, through the operation of the last sentence in Article 1005, in the interest of justice, we deem Cornerstone's affirmative defense of error properly pled.[8]

## CONCLUSION

For the reasons assigned above, we reverse the trial court's determination that Cornerstone Christian Academy of Lafayette, Inc. terminated the subject employment contract without just cause and, thus, dismiss Stephanie LaCross' suit. We assess all costs, including those incurred at the trial level, to her.

**REVERSED AND RENDERED.**

---

[7]*See Norris v. Allstate Ins. Co.*, 293 So.2d 918 (La.App. 3 Cir. 1974).

[8]*See Id.*