515 So.2d 826 (1987)
Bennetta W. Ernestine, wife of/and James ERNESTINE
v.
Carol BAKER and Wagner Truax Realty Company.
No. 87-CA-304.
Court of Appeal of Louisiana, Fifth Circuit.
November 9, 1987.
J. Courtney Wilson, New Orleans, for plaintiffs-appellees Bennetta W. Ernestine and James Ernestine.
J.B. Kiefer, Sherry W. Schneider, Dean R. Yellin, Metairie, for defendant-appellant Wagner Truax Realty Co.
John A.E. Davidson, Metairie, for defendant-appellee Carol Baker.
Before KLIEBERT, BOWES and GOTHARD, JJ.
KLIEBERT, Judge.
Bennetta and James Ernestine, plaintiffs-purchasers, filed a petition against Carol Baker, defendant-seller, and Wagner Truax Realty Company, defendant-realtor, entitled "Complaint in Redhibition and for Misrepresentation" seeking to recover the sum of $2,605.00 (plus interest and attorney fees) which amount was alleged to be the cost of repairing a leaking roof and the damages caused thereby. Defendant-realtor then third partied defendant-seller seeking indemnification for any judgment, interest and attorney fees rendered against it plus attorney fees incurred in defending the principal demand.
The trial judge, based on the factual finding that the leaking roof was a latent defect known by the selling agent of realtor, cast the owner and the realtor in judgment, *827 in favor of the purchaser, jointly and severally for $1,560.00 ($2.560.00 replacement cost of the roof less $1,000.00 depreciation on replaced roof).[1] By separate judgment also in favor of purchaser, the realtor alone was cast for an additional $1,500.00 of attorney fees. The third party action filed by realtor was dismissed.
Only the realtor perfected an appeal and on appeal[2] contends the trial court erred in finding (1) the defect in the house was latent, (2) Wagner Truax knew of the defect and failed to disclose it, and (3) in assessing attorney fees against Wagner Truax alone. For the reasons which follow, we affirm the judgments of the lower court except as to the assessment of attorney fees against Wagner Truax.
The property owner and the realtor's listing salesperson, Mary Schulte, made an inspection of the property before it was listed. Ms. Schulte testified she saw no evidence of leaks or stains in the property during this "inspection". Also, the owner said she made an inspection with a contractor named John Day who was then employed to repair anything damaged, paint the entire house, inside and outside, including treating the water stain on the living room ceiling and because of this stain he was to check for and repair any leaks. After Day reported no leaks had been found, the owner listed the property for sale with Mary Schulte, the listing agent for Wagner Truax.
Following the listing, other selling agents of Wagner Truax (Alice Daigle and Kathleen Lehman) obtained from Roland and Hilda Benoit a contract to purchase the house and with the consent of the seller, permitted them to occupy the house pending the sale. At the expiration of the agreement to purchase, the Benoits vacated the house without effecting a purchase. Thereafter, the listing agent negotiated and effected an agreement to purchase with Ms. Carol Baker. The house was sold to her pursuant to this agreement.
According to the testimony of the Benoits on at least two occasions they informed Wagner Truax's selling agents of a large water stain in the dining room ceiling before moving in and, after moving in, discovered and reported a stain in the foyer ceiling. Additionally, they complained of and informed the selling agents that the leak in the roof was creating a strong odor in the house. Since no corrective measures were taken the Benoits decided not to buy the house and moved out.
All three employees of Wagner Truax testified they had no knowledge of the leak in the roof and that the Benoits had elected not to buy the house because they were unable to sell their own home in Amite (the sale of the house was a pre-requisite to the purchase). Alice Daigle and Kathleen Lehman, however, admitted the Benoits had informed them of an odor in the house and they in turn had informed the listing agent of the Benoits' report. According to the Ernestines' testimony they were not told of the leak and did not discover the leak until after they had purchased and moved into the house. An expert witness, appearing on behalf of the Ernestines, testified that some of the water stains had been painted over and were not immediately detectable as water stains. He also testified that in his opinion with the passage of time a painted-over water stain would become more and more noticeable as the stain bleeds through the paint.
The trial judge made the factual finding that Wagner Truax knew of the leak and failed to communicate that knowledge to the purchasers or the sellers while urging the soundness of the house to the buyers. Notwithstanding this finding he also found the leak to be a latent defect. Based on our careful review of the record, we cannot say the trial judge erred in reaching these factual conclusions. Although there is some conflicting testimony regarding the stained ceiling and whether it was noticeable after being treated and *828 painted, there is sufficient evidence to support and justify the trial court's factual finding. Hence, we are not at liberty to draw other factual conclusions from the record. Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Based on these factual findings, we now inquire into the legal theories under which the owner and/or the realtor can be held liable under the facts found by the trial court.
It is true, as argued by Wagner Truax, agents are generally not responsible for events which arise in the affairs in which they are employed and consequently not subject to liability on an action in redhibition or quanti minoris unless they can be classified as an owner. This is so because the action in redhibition is one between the buyer and seller and without such a relationship, the action cannot be maintained. Nevertheless, an agent may be liable under some other theory of recovery, such as negligent representation under Civil Code Articles 2315 and 2316. Josephs v. Austin, 420 So.2d 1181 (La.App. 5th Cir.1982) writ denied, 427 So.2d 870 (La.1983); Haggerty v. March, 480 So.2d 1064 (La.App. 5th Cir. 1985.)
Here the trial court concluded that upon Wagner Truax's obtaining knowledge of the latent defect, i.e., leaking roof, it had a duty to communicate the information to seller and to the buyers and their continued representation to the seller that the house was sound subjected them to liability for negligent misrepresentation under the provisions of C.C. Articles 2315 and 2316. We agree with the conclusion, for our supreme court has long recognized that C.C. Articles 2315 and 2316 afford a broad ambit of protection for persons damaged by intentional and negligent acts of others, sufficient to encompass a cause of action. Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979); Josephs v. Austin, supra. The ruling cited also recognizes the realtor's duty to disclose to the purchasers defects of which he had knowledge, and that breach of the duty renders him liable for damages sustained by the purchaser. Moreover, having recognized the importance of the duty, the legislature has imposed potential penalties and license suspensions for failure of the realtor to make the disclosure. See R.S. 37:1455. Hence, the realtor's contention that it cannot be held responsible in this instance is without merit.
We next consider that portion of the judgment in favor of plaintiffs and against Wagner Truax awarding to plaintiffs $1,500.00 for attorney fees.
On the appeal counsel for plaintiffs admits in brief that "Contrary to the admission of defendant, plaintiffs can find no authority in Josephs or elsewhere that attorney's fees may be awarded against defendant Wagner-Truax." Given this admission, we must vacate and set aside that portion of the judgment casting Wagner Truax for attorney fees of $1,500.00. Each party is to bear his own cost of the appeal.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Plaintiffs' petition prays for the recovery of $2,605.00, however, documents introduced at trial show the correct cost to be $2,560.00
[2] Although filed and granted as a suspensive appeal, we note the appeal bond was not timely filed.