581 So.2d 1073 (1991)
Barbara G. Adler, Wife of/and Uwe M. ADLER
v.
Jennifer M. Parkerson, Wife of/and G. Bruce PARKERSON, et al.
No. 91-CA-73.
Court of Appeal of Louisiana, Fifth Circuit.
June 5, 1991.
*1074 Fred Schroeder, Metairie, for plaintiffs-appellants.
William Hall, Metairie, for plaintiffs-appellants.
David J. Krebs, New Orleans, for defendants-appellees.
Before KLIEBERT, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.
This is an appeal from a judgment rescinding an agreement to purchase a house. For the following reasons, we affirm.
Plaintiffs-appellants are Uwe Adler and his wife, Barbara. Uwe Adler, a contractor, purchased the property at issue in 1984 or 1985, with the intention of renovating the house and re-selling it. After completion of the renovations, the Adlers offered the house for sale and employed Mathilde Nelson, a real-estate agent, to assist them. Nelson testified that during her initial inspection of the property she asked the Adlers, inter alia, if the house had been shored and was told that it had been.
Several weeks later, Nelson showed the house to Bruce and Jennifer Parkerson, defendants-appellees. During the course of this visit to the property, which took place during Bruce Parkerson's lunch hour, Nelson pointed out the various renovations which had been done, and stated that the house had been shored during the course of this work. Later that evening, Nelson met with the Parkersons to further discuss the renovations, and the subject of shoring was again raised by them. Nelson re-iterated that the house had been shored, and that she thought this work had been done by Abry Brothers, but would verify this with the Adlers.
Nelson contacted Mr. Adler by telephone concerning the shoring and concluded from her conversation with him that shoring had indeed been done by Abry Brothers. She so informed the Parkersons the next day when they again visited the house. She also testified that when the Parkersons decided to make an offer for the property shortly thereafter, she discussed predicating it upon a complete structural inspection. The Parkersons decided however, that this would not be necessary because they knew from acquaintances who had also employed Abry Brothers that this was a very reputable shoring company.
After several offers and counter-offers, the parties finally entered into an agreement to purchase for a price of $205,000. When the house was appraised in conjunction with the Parkersons' bank loan application, the appraiser apparently was skeptical that the house had indeed been shored, and recommended to the bank that a structural inspection be done. When Nelson told the sellers of this development, Uwe Adler informed her that she was mistaken in her representations to the Parkersons that the house had been shored by Abry Brothers. Adler's testimony at trial was that he had himself done some partial shoring under the floor of the dining room. As for Abry Brothers, he stated that he had gotten estimates from that company on the costs of raising the house several feet in order to convert the basement into living space, but that this work was never undertaken.
*1075 Upon being told of this situation by Nelson, the Parkersons awaited the results of the structural inspection. That inspection revealed that there were cracks in the brick walls on at least one side of the house which indicated uneven settling, that aside from the work under the living room, no recent shoring had been done, and that the structure was in need of further shoring work. Upon receiving this report, the Parkersons declined to go forward with the sale.
After tendering title, the Adlers brought the present suit for specific performance on the agreement to purchase or for damages. The Parkersons reconvened for recovery of their $2,500 deposit and the $18,000 promissory note which they had delivered to Nelson at the time of signing the agreement to purchase. They also sought damages and attorney's fees based on fraud. After trial on the merits, the trial judge entered judgment rescinding the contract on the grounds that the Parkersons had entered into the agreement due to an error as to the quality of the property. He further ordered that their deposit and promissory note be returned to them, but did not award further damages or attorney's fees based on fraud. The Adlers now appeal from that judgment.
The Articles of the Civil Code pertinent to this case are:
Art. 1949. ERROR VITIATES CONSENT
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
Art. 1950. ERROR THAT CONCERNS CAUSE
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
The trial judge found that the Parkersons would not have entered into the contract had they known that the house had not been professionally shored, and further that the Adlers knew or should have known that this was a cause of the agreement. He concluded that pursuant to La.Civ.Code Art. 1949, this error vitiated consent, and therefore that the contract should be rescinded. On the fact of this case, we agree with the above findings and conclusions. Stack v. Irvin, 246 La. 777, 167 So.2d 363 (1964); Franklin v. Evans, 315 So.2d 818 (La.App. 4th Cir.1975).
Appellants urge to the contrary that the Parkersons were somehow inexcusably negligent either in not noticing the cracks in the masonry which suggested the need for shoring, or in not verifying with Abry Brothers the representation that they had in fact shored the house. They particularly argue that a simple telephone call to Abry Brothers by the Parkersons would have disclosed the error, and their failure to do so precludes them from urging this error as grounds for rescission, citing Scott v. Bank of Coushatta, 512 So.2d 356 (La. 1987). We reject appellants' reliance of the above case for several reasons.
In Scott v. Bank of Coushatta, supra, the court stated as follows:
A review of this jurisprudence indicates two prominent factors in the evolution of the contractual negligence defense:
(a) Solemn agreements between contracting parties should not be upset when the error at issue is unilateral, easily detectable, and could have been rectified by a minimal amount of care.
(b) Louisiana courts appear reluctant to vitiate agreements when the complaining party is, either through education or experience, in a position which renders his claim of error particularly difficult to rationalize, accept, or condone (at 362)
Concerning the second of the above factors, there is nothing in the record to demonstrate that the Parkersons were in a position through education or experience to have determined whether or not the house had been shored, or was in further need of *1076 shoring. Bruce Parkerson is an attorney practicing in the insurance defense field, but there was no showing that either he or his wife were otherwise knowledgeable about foundations, shoring, construction or renovation work.
As to the first factor, the evidence simply does not establish that the lack of shoring was easily detectable. Nelson, an experienced real estate agent, testified that during her various visits to the house she did not notice any problems which might have led her to believe that the house had settled unevenly or that there was any other indication that shoring work had not been done or that such work was necessary. Although the structural expert and Uwe Adler, a general contractor specializing in renovations, were able to see these defects by simple inspection, there was no showing made that these problems could, or should have been, easily detected by inexperienced persons such as the Parkersons.
Additionally, it is not at all evident on the facts of this case that there was "unilateral" error in the formation of the contract. The Parkersons were in error in that they believed the representations that the house had been shored by Abry Brothers; the Adlers were equally in error in not understanding after inquiries by their agent Nelson, that this fact went to a substantial quality of the house, without which the Parkersons would not have incurred the obligation.
This situation was analyzed by Professor Vernon Palmer in "contractual negligence in the Civil LawThe Evolution of a Defense to Actions for Error", 50 Tul.L.Rev. 1, 28-29 (1975), as follows:
The defendant [in an action for rescission] who has misrepresented the facts is not in the position of the innocent party against whom rescission is sought for a unilateral error. By hypothesis, the defendant himself labors under a misperception of reality, and he may well have been negligent to have spoken without ascertaining the facts. Thus, there is surely error, and possibly fault besides, on both sides of the contract. Assuming good faith, rescission would not unjustifiably deprive the defendant of the profits of a bargain that he could have foreseeable exacted or relied upon in the absence of error.
This is precisely the situation before us in the present case. Had the Adlers properly understood the nature of the Parkersons' expressed concerns about the structural soundness of the house, and had they properly represented the facts on this point, the Parkersons would at least have placed a structural inspection clause in the contract, and would not have been further bound upon receipt of the negative results of such an inspection. Thus, rescission of the contract does not deprive the Adlers of the profits of a sale which, had the facts been properly represented upon inquiries by the Parkersons, would not have taken place, or at least not on the terms of the contract as confected.
The simple fact of this matter is that the Parkersons made repeated inquiries about the shoring, misrepresentations were made, and they relied on these misrepresentations both by not seeking a structural inspection prior to signing the contract and foregoing the insertion of an inspection clause in the agreement, either of which acts would have been fatal to the sale. That the misrepresentations arose through misunderstanding or some failure of communication between the Adlers and their agent does not render them any less erroneous for purposes of valid consent between the parties. The contract at issue was thus properly rescinded by the trial judge due to a vice of consent, and for the above reasons, we affirm that judgment.
AFFIRMED.