VICTORY, Judge.
Defendant, T.L. James, Inc. (James), appeals a lower court ruling which awarded plaintiffs, H.M. and Katherine Fowler (Fowlers), $15,230 in royalty payments for soil removed from their land and used in a construction project. We reverse.

FACTS

On March 4, 1985, H.M. and Katherine Fowler granted a servitude over a 48.77 acre tract of land in Red River Parish to the Black Lake Bayou Recreation & Water Conservation District of Red River Parish, Louisiana (Conservation District), a political subdivision created by the Department of Transportation and Development (DOTD) to oversee the construction of a 3,000-acre water reservoir. The servitude granted was a perpetual servitude for the permanent flooding of the pool area (the portion of the Fowlers land which lay below the 138.50 contour line) and for temporary flooding of the remainder. The servitude also allowed DOTD, its employees, agents, contractors, etc. to perform any work on the property necessary to complete the project. The Fowlers were paid $43,770, the full appraised value of the property, for the servitude.
On July 9, 1990, James and DOTD contracted for construction work and bridge alterations associated with the reservoir project. A portion of this work required “fill dirt” for road embankment purposes. James obtained a solid mineral lease from the Fowlers on July 17, 1990 to excavate soil from their property above the 138.50 contour line, and agreed to pay 40e per cubic yard in royalties for all soil removed from this area. James gave the Fowlers a $1,000 deposit towards royalty payments under the lease.
Thereafter, approximately 150,000 cubic yards of soil were removed from the Fowl-ers’ land by James, most of which was below the 138.50 contour line. Once the dirt was removed, the Fowlers made a demand upon James for $60,000 in royalty payments under the lease. When James refused to pay, the Fowlers filed suit seeking damages in the amount of double royalties and attorney fees, claiming bad faith by James in failing to pay for all the soil taken from their land.
James answered that the lease only covered property above the 138.50 contour line and that the value of the soil taken above that level did not exceed the $1,000 deposited with the Fowlers. In addition, James claimed that the perpetual servitude between the Fowlers and the Conservation District specifically granted DOTD the right to excavate soil from below the 138.50 contour line without having to compensate the landowner and that the District and DOTD had given them the right to excavate below that level. James thereafter filed a third-party demand naming as defendants the State of Louisiana, DOTD, and the Grand Bayou Reservoir Commission, formerly the Black Lake Bayou Recreation & Water Conservation District of Red River Parish, Louisiana.
The case was tried on December 12, 1991. In a written opinion handed down in April of 1992, the trial court held that the Fowlers were due some additional royalties, but because $43,770 had been paid to them by the Conservation District for the perpetual servitude on the land, that sum should be subtracted from the value of the soil taken, as well as the $1,000 deposit given by James. The trial court awarded plaintiffs $15,230, along with 25% attorney fees. James’ third-party demands were rejected. It is from this ruling that James now appeals. The Fowlers answer, seeking an increase in the award.

DISCUSSION

This case primarily involves the interpretation of two contracts, the 1985 perpetual servitude agreement between the Fowlers and the Conservation District, and the 1990 solid mineral lease between the Fowlers and James. Based on the wording of these *640 two documents, we find that James does not owe any further royalties to the Fowl-ers, and that the lower court ruling must be reversed.[1]
Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. Art. 2045. Intent of the parties to a contract is to be determined in accordance with plain, ordinary and popular sense of language used, and by construing the entirety of document on a practical, reasonable and fair basis. Lindsey v. Poole, 579 So.2d 1145 (La.App. 2d Cir.1991), writ denied 588 So.2d 100 (La.1991). Where the meaning of a contract is to be determined solely from the words upon its face, without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court’s findings. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991).
The servitude agreement provides in relevant part:
The consideration for the granting of this perpetual servitude is the sum of FORTY THREE THOUSAND SEVEN HUNDRED SEVENTY AND NO/100 ($43,770.00) Dollars. Said perpetual servitude is hereby granted on the above 48.77 acres for all uses and purposes necessary for the construction, development and maintenance of the GRAND BAYOU RESERVOIR. This servitude shall be a perpetual servitude for permanent flooding on the above described property in the reservoir pool area of the said GRAND BAYOU RESERVOIR.
By virtue of the servitude herein granted, which said servitude duration shall continue as set forth herein, Grantee, its successors and assigns, the United States Army, Corps of Engineers, the State of Louisiana, Department of Transportation & Development, Office of Public Works, their officers, agents, employees, workmen, contractors and subcontractors shall have and enjoy the right and privilege of entering and going upon the property hereinabove described: of bringing and using thereon such tools, machinery, equipment and vehicles as they shall consider necessary; of clearing, grading and sloping the said property; of excavating and constructing drainage ditches and spoil retaining dikes; of depositing and stockpiling thereon or removing therefrom in such quantities as they shall see fit soil, sand, shell, clay and gravel excavated or dredged from the channel right of way; of depositing and stockpiling thereon and removing therefrom stone, concrete, riprap and other materials for the construction, maintenance and operation of the GRAND BAYOU RESERVOIR PROJECT.
There is no dispute that James’ construction work and bridge alterations are part of the overall reservoir project and that the soil removed from the Fowlers’ land was used by James for these purposes. Thus, from 1985 forward, under the clear wording of the servitude, DOTD, and its contractors and subcontractors, had the right to excavate from the pool area of the reservoir (land below the 138.50 contour line) any material needed in the construction of the project. James, one of DOTD’s contractors, was not only given this right by the language of the servitude itself, but expressly by written authorization from the Grand Bayou Reservoir Commission dated July 18, 1990. The trial judge recognized the right of James to excavate and remove soil from the pool area, but held it could not do so without paying royalties.
As consideration for the servitude, the Fowlers were paid $43,770, the full market value of their land. In return for this money, the Fowlers granted the Conservation District and the other entities named in the servitude all of the rights mentioned in the servitude. There is nothing in the servitude to suggest that the grantees, who were given the specific right to remove materials for construction, maintenance and operation of the reservoir project “in such quantities as they shall see fit”, were obligated to pay more consideration for removing the soil than that specified in the *641 servitude. The consideration paid for the servitude, for all practical purposes, was the full appraised value of the land.
We recognize that the servitude says the Fowlers reserve to themselves the oil, gas and other minerals on, in, or under the land.[2] However, when reading a contract such as this servitude, each provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. Art. 2050. When the servitude is read as a whole, it is clear that this reservation was only meant to apply to those minerals that the Fowlers had not given the grantee and others the right to remove in order to construct, maintain and operate the Grand Bayou Reservoir Project. As owners of the property, they retained all the rights not granted the grantees in the servitude, including ownership of and the right to remove soil to the extent it did not interfere with the grantee’s right to remove soil in such quantities as needed to construct, maintain and operate the project. See LSA-R.S. 31:5.
The second important agreement in this case is the solid mineral lease executed between the Fowlers and James for the excavation of soil on a certain portion of the Fowler’s land. The lease describes the land to be leased as follows:
That certain tract of land containing 13 acres, more or less, lying above elevation 138.50 N.G.V.D. and being located entirely within the NW'/t of NEV4 Section 23, Township 12 North, Range 9 West, Northwestern Land District, Red River Parish, Louisiana. Being further described as all property H.M. Fowler, Sr. owns in the above described quarter section.
This provision is clearly intended to cover only that portion of the Fowler property above the 138.50 contour line that was not included in the prior servitude to the Conservation District. Uncontroverted testimony was elicited at trial that the amount of soil taken from above the 138.50 contour line did not exceed the $1,000 deposit given by James to the Fowlers.-
While parts of the lease are poorly phrased[3], the obvious intent of the parties was that only the Fowler’s land in the quarter section above the 138.50 contour line was being leased. Therefore, since the deposit of $1,000 more than covered the amount of soil removed above the 138.50 contour line, the Fowlers are not due any additional royalty payments under the lease.

DECREE

For the forgoing reasons, the judgment of the trial court is reversed and all claims against James are dismissed. Costs in this court and the trial court are to be paid by the plaintiffs.
REVERSED. PETITION DISMISSED.
APPLICATION FOR REHEARING
Before SEXTON, NORRIS, VICTORY, BROWN and STEWART, JJ.
Rehearing Denied.

. Our ruling pretermits a need to discuss other assignments of error raised by the parties.

. In Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So.2d 228 (La.1942), the Louisiana Supreme Court held a reservation of "mineral, oil and gas rights” did not include sand and gravel deposits.

. The lease excludes royalty payments for soil removed from "land owned by” the Conservation District. In fact, the District did not "own” the property in the pool area, but had a perpetual servitude over it.
The Fowlers argue the last sentence of the description shows the parties intended that all of his land in the quarter section was intended to by covered by the lease. If this were the intent, there would have been no need to mention a contour line and specific acreage.