672 So.2d 226 (1996)
Mary Forrester NESBITT, et al., Plaintiffs-Appellees,
v.
Barney Rentz DUNN, Jr., et al., Defendants-Appellants.
No. 28240-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
*229 Schober, Reynolds & Antee by Kenneth R. Antee, Jr., Shreveport, for Appellants.
Blanchard, Walker, O'Quin & Roberts by J. David Garrett, Shreveport, for Appellees.
Before MARVIN, WILLIAMS and STEWART, JJ.
STEWART, Judge.
This breach of contract action arises out of a lease/purchase agreement executed between plaintiffs Mary Forrester Nesbitt, Susan Forrester Roberts, and Rebecca Forrester Knight and defendants Dr. Barney Rentz Dunn, Jr. and Victoria Elaine Dunn. After a trial, the trial court rendered a judgment in favor of plaintiffs and awarded damages in the amount of $59,432.18. Defendants appeal from that judgment. For the following reasons, we affirm.

FACTS
On May 6, 1989, Dr. Barney Rent Dunn and his wife, Victoria Elaine Dunn, entered into a lease/purchase agreement with Mary Forrester Nesbitt, Susan Forrester Roberts, and Rebecca Forrester Roberts, whereby defendants agreed to purchase plaintiffs' property located at 1030 Erie Street in Shreveport, Louisiana, for the price and under the terms and conditions set forth in the agreement as modified.
As contemplated by the agreement, plaintiffs leased the property to defendants by a Lease of Residence at a monthly rate of $1,000 for a term commencing on June 1, 1989 and extending until the closing date of the sale of the property, but not later than May 31, 1990. The agreement stated that the closing date of the sale was to be thirty days following the sale or other disposition of defendants' Marietta, Georgia residence or on June 1, 1990, whichever was earlier. It further stated that, if defendants had not sold or otherwise disposed of their Marietta, Georgia residence by May 1, 1990, they could withdraw from the contract, in which event they would be liable to the sellers for liquidated damages in the amount of $20,000 cash. To secure performance of defendants' obligation for such liquidated damages, defendants executed and delivered to plaintiffs a Demand Promissory Note which was paraphed for identification with a Chattel Mortgage. Pursuant to the terms of the agreement, defendants moved into the subject residence in June 1989.
In December 1989, defendants were able to sale and dispose of their Marietta, Georgia property. Plaintiffs claim they were not immediately notified of this occurrence as required by the lease/purchase agreement and did not become aware of the disposition by defendants of their Marietta, Georgia property until sometime during April 1990.
In late April or early May 1990, plaintiffs' attorney, Robert Roberts III, began preparing *230 the closing documents for the sale of plaintiffs' property to defendants. During the same period, defendants were attempting to secure financing for the purchase of the property. The lease/purchase agreement further provided that it was contingent upon the property appraising for no less than $230,000. In connection with defendants' attempt to secure the necessary financing from Premier Mortgage, an appraisal of the property was conducted by Bruce R. Mercer.
Mercer appraised the property for $230,000 subject to "an acceptable certification from engineer for foundation." He noted in his report that "the pier/beam foundation [had] suffered from shifting/settlement as evidenced by separation in the brick joints" and that "[a]n inspection by a structural engineer [was] required to determine severity." The defendants never sought to have an engineer conduct an inspection of the property. Initially, Premier Mortgage required that certain repairs be made to the property as a condition for loan approval, but subsequently withdrew that requirement and approved defendants' loan application.
In late May 1990, defendants informed plaintiffs that they did not intend to go forward with the purchase of the property or proceed with the closing of the sale as provided in the lease/purchase agreement. Defendants allege their decision was based on foundation defects in the property and the lack of disclosure of the existence of an engineer's report (Hyde Report), which defendants allege revealed numerous foundation defects and which was prepared prior to the time the defendants entered into the lease/purchase agreement with plaintiffs. Plaintiffs subsequently had a civil engineer, James Mohr, conduct an inspection of the property and prepare an engineer's report (Mohr Report). They put the property back on the market and sold it to subsequent purchasers for $187,500.
Plaintiffs filed a breach of contract action against defendants asserting that defendants breached their obligations under the contract by: (1) failing to notify plaintiffs of the sale or other disposition of their residence in Marietta, Georgia, following the completion of such in December 1989, as required by the contract; and (2) failing and refusing to proceed with the steps necessary to comply with their obligation under the contract to purchase the property and to close the purchase on or before June 1, 1990, including the failure and refusal to comply with the reasonable requests of the lending institution selected by them and, ultimately, by categorically stating their intention not to comply with their obligation to purchase the property.
Defendants answered, asserting the property at issue contained hidden defects and vices known to plaintiffs and not disclosed to defendants prior to execution of the lease/purchase agreement. Defendants further asserted specific conditions of the sale were not met, including the failure of the property to appraise at $230,000 and the inability of defendants to qualify for financing. Based on these reasons, defendants asserted affirmative defenses of fraud, failure of consideration, and bad faith on the part of plaintiffs in the creation of the contract such that consent was vitiated. Alternatively, they asserted that, in the event defendants were found liable under the contract, any damages awarded by the trial court to plaintiffs should be limited to the liquidated damages of $20,000 provided for under the contract.
After a trial on the merits, the trial court rendered a judgment in favor of plaintiffs granting them damages in the amount of $59,432.18 together with judicial interest thereon from June 22, 1990 until paid; attorney's fees in the amount of $7,500; expert witness fees in the amount of $900; and court costs in the amount of $565.05. This appeal followed.

ASSIGNMENT OF ERROR NUMBER ONE
Defendants contend the trial court erred in finding plaintiffs had no prior knowledge of the Hyde Report prior to defendants entering into the lease/purchase agreement.
Under the manifest error-clearly wrong standard, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the *231 fact finder's conclusion was a reasonable one. Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Its finding of fact will not be disturbed on appeal unless the record evidence does not furnish a basis for the finding or furnishes a reasonable basis for the finding, but nonetheless that finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In the present case, the trial court found that "there [was] no indication that plaintiffs or their attorney Mr. Roberts had prior knowledge of this report" and that "there [was] no indication that plaintiffs had knowledge of the contents of these reports during their dealings with the defendants." The trial court based its conclusions upon the testimony of Robert Roberts, (plaintiffs' attorney) and Mary Forrester Nesbitt (a plaintiff).
Roberts testified he did not have a copy of the Hyde Report nor was he aware of its existence at the time of the sale to defendants. He stated he was not aware of the report until the discovery phase of this case. He further testified that plaintiff Mary Forrester Nesbitt was aware of the existence of the report prior to May 1989, but he did not think she had known the contents of the report at that time. According to Roberts, none of the plaintiffs had a copy of the report.
Nesbitt testified similarly. She testified she knew the previous prospective purchasers, the Grozingers, had an engineer inspect the property and prepare an engineer's report. She testified that she did not take any actions to find out what the report said because she did not request the report be prepared nor did she pay for it to be prepared (the Grozingers did), and it was not her report. She further testified she never saw the report nor had any knowledge of its contents and that the first time she learned of its contents was when she talked to someone interested in buying the house after the deal with the defendants fell through. Defendants presented no controverting evidence.
The trial court's findings are supported by evidence in the record and are not clearly wrong insofar as the court intended to find that neither plaintiffs nor their attorney had knowledge of the contents of the Hyde Report at the time the subject contract was executed. However, the evidence clearly reflects that Nesbitt was aware of the existence of the Hyde Report and, to the extent the trial court intended to find Nesbitt was not aware of the existence of the Hyde Report, its finding is not supported by the record and is clearly wrong.

ASSIGNMENTS OF ERROR NUMBERS TWO AND FIVE
Defendants contend the trial court erred in failing to find that plaintiffs, one of which was a licensed real estate broker, breached their duty to disclose the existence or contents of the Hyde Report, which would have revealed to defendants numerous defects in the foundation prior to the execution of the lease/purchase agreement. They further argue plaintiffs' failure to disclose the existence or contents of the Hyde Report amounts to negligent misrepresentation.
In reviewing negligent misrepresentation cases, the appellate courts' approach has been to integrate the tort doctrine into the duty/risk analysis. In order for the doctrine to apply three circumstances must occur: (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty; and (3) the breach must have caused damages to plaintiff. Application of the duty/risk analysis is employed by our courts on a case-by-case basis. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993) (citations omitted); LSA-C.C. arts. 2315 and 2316.
The initial inquiry is whether a duty is owed to these particular defendants to protect them from the particular harm they allegedly suffered. Id. Whether or not a duty exists is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Our courts have found a duty owed to the tort victim under factual scenarios of both non-disclosure and misinformation cases. Barrie v. V.P. Exterminators, supra (citations omitted). In cases involving a realtor or broker and purchasers, courts have *232 held the realtor or broker has a duty to disclose to purchasers defects of which he has knowledge. See Ernestine v. Baker, 515 So.2d 826 (La.App. 5th Cir.1987); and Josephs v. Austin, 420 So.2d 1181 (La.App. 5th Cir.1982), writ denied 427 So.2d 870 (La. 1983).
In support of their argument, defendants cite Adler v. Parkerson, 581 So.2d 1073 (La. App. 5th Cir.), writ denied 586 So.2d 538 (La.1991). Adler involved an action brought by a seller for specific performance on an agreement to purchase after the purchasers declined to go forward with the sale. The purchasers reconvened for recovery of the deposit and promissory note they delivered to the agent at the time the agreement was executed. The trial court found that the potential purchasers were entitled to rescission of the contract where they believed the misrepresentation that the house had been shored by a particular construction firm. The court of appeal agreed with the trial court's findings and conclusions, including its finding that the purchasers would not have entered into the contract had they known the house had not been professionally shored and that the sellers knew or should have known this was the cause of the agreement.
The present case is distinguishable from Adler. In Adler, the purchasers made repeated inquiries about shoring; misrepresentations were made regarding shoring; and the purchasers relied on those misrepresentations both by not seeking a structural inspection prior to signing the contract and foregoing the insertion of an inspection clause in the agreement, either of which act would have been fatal to the sale. Here, there is no evidence to indicate defendants-purchasers made any inquiries regarding the foundation; there is no evidence indicating any misrepresentations were made regarding the foundation; and there is no evidence indicating the purchasers relied to their detriment on any perceived misrepresentation regarding the condition of the foundation. There is also no evidence that plaintiffs or their attorney even had any knowledge of the contents of the Hyde Report and, thus, any duty to disclose such information. Only Nesbitt even knew of its existence, and she testified she had no reason to request a copy of the report from the previous potential purchasers who had it prepared. She testified that the previous purchasers made no references to the report in making their offer and that the offer was based on their intent to extensively remodel the residence.
The evidence in the record provides a reasonable basis for the trial court's finding that plaintiffs neither owed this particular duty to disclose the contents of the Hyde Report (of which plaintiffs had no knowledge) to defendants nor breached any alleged duty to disclose such information. Because we determine that the trial court was not clearly wrong in its findings, we do not address defendants' argument that Nesbitt, who was a licensed real estate agent, owed an extended duty to defendants, except to note that Nesbitt was not acting as a real estate agent in the present case.
As their fifth assignment of error, defendants assign as error the trial court's failure to find plaintiffs did not act in good faith and failure to find they breached their obligation to faithfully perform pursuant to the contract by withholding information regarding the Hyde Report. Defendants allege Nesbitt was fully aware of the property and the fact that there had been some shifting in the foundation; she intentionally did not inquire about the Hyde Report obtained by the previous potential purchasers so that she would not have to disclose such information; she was aware an engineer had rendered a report which reflected substantial defects with the foundation and that a prior offer of almost 25 percent less than the listed price had been made as a result of the repairs necessitated by the engineer's report.
Defendants cite Kizer v. Burk, 439 So.2d 1051 (La.1980) in support of their argument. In Kizer, the Supreme Court held the plaintiff was entitled to dissolution of the contract where defendant, despite a contract provision requiring him to faithfully and carefully guard and protect the premises, made an unauthorized sale of standing timber on the premises. It further found a reading of the lease/purchase agreement provisions made it clear the parties intended that the contract to sell at the termination of the lease be *233 conditioned on the faithful performance of those obligations was a suspensive condition of the contract to sell. In the present case, there is no such provision in the lease/purchase agreement. For this reason, we find the present case distinguishable from Kizer. However, LSA-C.C. art. 1983 provides contracts must be performed in good faith.
With respect to defendants' allegations, Nesbitt testified she did not have any information which would have prompted her to inquire as to the contents of the report, and was not aware of any significant foundation defects regarding the subject property. She further testified the house was old and any problems with it were visible. Defendants presented no evidence to substantiate their allegations that plaintiffs did not faithfully perform their obligations under the contract. They presented no evidence to support their allegation that plaintiff Nesbitt acted deceitfully in taking no action to obtain a copy of the Hyde Report from the Grozingers or in failing to inquire as to what was in the report; and they presented no evidence showing Nesbitt knew what was contained in the report or showing that the offer made by the previous potential purchasers was based on the contents of the report.
In sum, no evidence was presented to substantiate defendants' allegations. Therefore, the trial court did not err in declining to find that plaintiffs did not perform their obligations in good faith.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendants contend the trial court erred in holding that the defects in the foundation as listed in the Hyde Report were not as contemplated by LSA-C.C. art. 1949. LSA-C.C. art. 1949 provides that error vitiates consent only when it concerns a cause, which was known or should have been known to the other party, without which the obligation would not have been incurred. Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object, or a substantial quality of that thing, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. LSA-C.C. art. 1950.
Defendants argue that, had they known of the existence of the Hyde Report and the problems with the foundation, they would not have entered into the contract with plaintiffs. They claim their subsequent decision not to purchase the property was because of the vice or defect in it and argue they have the option of receding from the contract or are entitled to the remedy of redhibition because the sellers were unable to deliver the property free of foundation defects, and such defects or vices existed at the time of the sale. See LSA-C.C. arts. 2491, 2496; and Cox v. Moore, 367 So.2d 424, 426 (La.App. 2d Cir.), writ denied 369 So.2d 1364 (La.1979). The question is whether the alleged defects in the property were sufficient to warrant a rescission of the lease/purchase agreement.
With respect to the nature of the defects themselves, the trial court found the Hyde Report and the Mohr Report did not note any foundation defect in the residence as contemplated by LSA-C.C. art. 1949 and found that the Hyde Report language implicitly recognized the structural stability of the residence, while the Mohr Report, prepared by James Mohr at the bequest of plaintiffs after defendants withdrew from the sale, explicitly stated that the residence was structurally sound.
The Hyde Report, dated January 30, 1989, states in pertinent part:
In my opinion, based upon information and visual observations obtained during my review... the following conclusions are offered:
A. The residence appears to have experienced minor differential movement of the underlying soils and/or support structure at the following locations ...
* * * * * *
F. The aforementioned defects affect the residence as follows:
1. Represent damage to load bearing portions of home.

2. Do not affect the load bearing capacity of the structural components of the *234 home such that they can no longer provide adequate support.

3. Do not vitially affect the use of home for residential purposes

[emphasis added.]
The Mohr Report, dated May 4, 1990, states in pertinent part:
As of this date, the foundation is structurally sound. Note that the house is not unsafe, but movement of foundation has caused cracks in material on the interior and exterior. The subject movement should not adversely affect the utility or livability of the living area. The movement may have been stabilized ...
[emphasis added.]
The court in Stack v. Irwin, 167 So.2d 363, 246 La. 777 (La.1964) interpreted the predecessor to LSA-C.C. art. 1949 as contemplating such a defect in the thing to be sold as to render it so imperfect that the contract would not have been made had the true facts been known. Here, the evidence reflects the movement of the soils and/or structural support was minor; the structural components provided adequate support; the house was not unsafe; use of the house for residential purposes was not adversely affected; and the utility or livability of the living area was not adversely affected. Both reports contain statements which support the trial court's finding that any defects in the property were not of the type contemplated by LSA-C.C. art. 1949. See, Bell v. Battles, 532 So.2d 479 (La.App. 1st Cir.1988); and Latsha v. Fryer, 763 F.Supp. 853 (E.D.La.1991).
The trial court further found the various problems with the subject property were apparent to everyone who inspected the property and thus were not defects sufficient to warrant rescission of the contract. Rescission of a contract is proper if, at the time a contract of the sale of a residence is executed, the residence contained a redhibitory defect of such a nature as to induce error relating to a known, principal cause of the contract. Stack v. Irwin, supra. A defect or vice is redhibitory when it is hidden, that is, not apparent nor known to the buyer; thus, a defect is not hidden and not redhibitory when the buyer knows of it. LSA-C.C. art. 2521, et seq. See also Revision Comments to LSA-C.C. art. 2521.
If the defects complained of by the purchaser are apparent, such that the purchaser might have discovered them by simple inspection, the purchaser cannot recover. A purchaser of residential property is not entitled to rescission of a contract where a reasonably prudent purchaser would have made a simple inspection and discovered the defect. Id.; Sievert v. Henderson, 506 So.2d 743 (La.App. 1st Cir.1987).
"Simple inspection" connotes more than casual observance by buyer and requires examination with a view of ascertaining the thing's soundness, but the buyer is not required to examine inner or hidden parts of the thing for the purpose of finding latent defects. Fruge v. Hancock, 94-730 (La.App. 3rd Cir. 12/7/94), 647 So.2d 488, writ denied, 95-0070 (La. 3/10/95), 650 So.2d 1181.
In the present case, several witnesses testified that the defects in the property were at least partially apparent. Plaintiffs attorney, Roberts, testified the house at issue was old and had settled. He testified there were many visible, apparent cracks on the sheetrock inside the home and a visible crack on the exterior of the house on the brick veneer. Nesbitt testified there were cracks in the sheetrock quite visible to anyone and that the house was old and had settled, which was normal for houses in that neighborhood. Dr. Dunn admitted that Randy Mason, the builder who inspected the house in May 1989 for defendants, showed defendants the exterior crack(s). Dr. Dunn further admitted he saw the interior cracks prior to making the first offer. He also testified that when Terminix went to the residence to treat for termites, it also treated for moisture damage.
The Hyde Report listed the numerous cracks and separations in the residence. The evidence supports a finding that the cracks in the brick veneer of the exterior, and in the sheetrock of the interior of the residence were apparent to everyone who inspected; thus, the trial court's findings are supported by a reasonable basis and are not clearly wrong or manifestly erroneous. See Sievert *235 v. Henderson, supra; Pickerel v. Long, 286 So.2d 430 (La.App. 2nd Cir.1973); Fruge v. Hancock, supra; Allen v. Burnett, 530 So.2d 1294 (La.App. 2d Cir.1988).
When the defect complained of is partially apparent, it becomes the purchaser's duty to make further investigation. Sievert v. Henderson, supra. The purchaser who purchases the thing without further investigation must be held to have waived his right to rescission of the contract. Id.
In the instant case, the trial court found no indication the defendants were concerned about the existence of these problems. The record reflects defendants had ample opportunity to have the residence inspected by a civil engineer, but failed to do so. Defendants viewed the house several times before moving in, once with a builder who inspected it on their behalf, and they resided in the house approximately a year. There is no indication in the record that they ever inquired or complained about possible foundation problems. They failed to further investigate even after the appraiser, Mercer, conditioned his appraisal upon inspection by an engineer to determine the severity of settling/shifting of the foundation. Moreover, there is no evidence to indicate that, even once they allegedly found out about the existence of the Hyde Report, they sought to obtain a copy of it. In fact, Dr. Dunn testified he did not obtain a copy of the report and had not actually seen it until the discovery phase of this proceeding.
The evidence supports a finding that any defects in the structure of the residence at issue were at least partially apparent or discoverable by "simple inspection" at the time of sale, and that plaintiffs did not consciously hide defects, and thus defendants' lack of further investigation precludes redhibition action. Taking all of the aforementioned evidenced and factors into account, we cannot say the trial court was clearly wrong or manifestly erroneous in concluding defendants' consent to the contract to sell was not vitiated.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendants next submit the trial court erred finding that the suspensive condition of the house appraising for $230,000 was deemed to have been fulfilled since defendants did not obtain an engineer's report. They contend the condition in the lease/purchase agreement that the property appraise for $230,000 required no affirmative action on the part of the purchaser or seller. They further argue the trial court erred in applying LSA-C.C. art. 1772 and assert the article is inapplicable to this proceeding.
LSA-C.C. art. 1772 provides that a condition is deemed fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment, and when such condition is regarded as fulfilled, it becomes enforceable. See also Revision Comments to LSA-C.C. art. 1772.
In the present case, the contract contained the suspensive condition that the property at issue appraise for $230,000. Mercer subsequently appraised the property at $230,000 subject to an "acceptable certification from engineer for foundation." Defendants failed to attempt to obtain such certification by having a civil engineer inspect the property to determine the condition of the foundation.
Now, defendants attempt to rely on information contained in the Hyde Report to prove that the residence was worth less than the stated contract price and less than the value at which it was appraised.
With respect to the utilization of the information contained in the Hyde Report for the purpose of reducing the property's value, we agree with the trial court. The trial court found that, if the condition was not fulfilled, it was not fulfilled due to the fault of defendants. The trial court inferred, from the totality of the facts before it, that the defendants' failure to obtain an engineer's report subsequent to Mercer's appraisal was premised on defendants' intention not to purchase the property. Based upon the evidence, the trial court made a reasonable inference and, based upon the conclusions drawn from the evidence presented, found defendants did not *236 make a good faith effort to obtain an engineer's report and otherwise acted in bad faith in their failure to take the necessary steps to obtain a finalized appraisal, including failure to notify plaintiffs immediately of defendants' Marietta, Georgia residence so as to trigger the closing of the sale. Factoring in the aforementioned evidence, the trial court deemed the suspensive condition that the property appraise for $230,000 fulfilled.
We note defendants' had an opportunity to have any problems, regarding the condition of the property, factored into the appraisal value. They cannot argue that, because such factors are contained in the Hyde Report, the factors should be considered in the determination of the value of the property. The property appraised for $230,000, and no action was taken by defendants to fulfill the condition upon which the appraisal value was based.
LSA-C.C. art 1772 is applicable to this case. The trial court did not err in finding that defendants' failure to obtain an engineer's report and fulfill the condition upon which the $230,000 appraisal was the fault of defendants and, thus, the condition that the property appraise for $230,000 was deemed or presumed fulfilled. Defendants failed to take the necessary action to ensure the proper appraisal value of the property and cannot now invoke the condition as a defense to the contract's enforcement.
Defendants further argue that the previous prospective purchasers failure to purchase the property reduced its value. It bases this assertion on the testimony of Bill Towery, who testified as an expert on real estate market values. The value of the house, as appraised, stands at $230,000 for the aforementioned reasons; thus, we pretermit any discussion as to whether Bill Towery's testimony supports a finding that the value of the residence is less than the stated contract price.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
Defendants contend the trial court erred in awarding plaintiffs $59,432.18 in actual damages for breach of lease/purchase agreement, where the agreement contained a provision for liquidated damages of $20,000.
A stipulated damage clause fixes the amount of all damages that may be recovered for breach of contract. Grimsley v. Lenox, 93-1618 (La.App. 3rd Cir. 9/14/94), 643 So.2d 203, writ denied, 94-2547 (La. 12/9/94), 647 So.2d 1117. The parties to a contract may stipulate the damages to be recovered in case of non-performance, defective performance or delay in performance. LSA-C.C. art 2005.
In the instant case, the liquidated damages clause in the contract clearly provides that such damages are only applicable in the event defendants withdraw from the sale because they were unable to sale or dispose of their Marietta, Georgia residence. The evidence reflects that condition was fulfilled. Thus, the provision is inapplicable in this instance where defendants refused to go forward with the purchase for other reasons, and damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. See LSA-C.C. art. 1995.
Additionally, the trial court concluded the defendants breached the lease/purchase agreement in bad faith. An obligor in bad faith is liable for all damages that are a direct consequence of his failure to perform. LSA-C.C. art. 1997. Thus, defendants are liable for all damages to plaintiffs that are a direct consequence of defendants' bad faith failure to perform.
Alternatively, defendants argue that plaintiffs were not damaged as a result of the subsequent sale of the property for $187,500. They concede the heirs would be entitled to loss of profit constituting the difference in the value of the property at the time of the alleged breach and the amount for which it sold. See LSA-C.C. art. 1995. However, defendants argue that the property was worth no more at the time of the breach than at the time of the subsequent sale and, thus, plaintiffs are not entitled to any damages in this respect.
Plaintiffs had a contract to sell the property to defendants for $230,000 conditioned *237 upon it appraising for that amount. That condition was fulfilled. When defendants breached the contract by refusing to go through with the sale of the property, plaintiffs lost the opportunity to sell the residence for $230,000. They subsequently sold it for $187,500. We therefore conclude the trial court did not err in awarding damages equaling the difference between the amount defendants contracted to purchase the property for and the amount for which the property subsequently sold (minus rent and earnest money paid by defendants).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
Defendants assign as additional error the trial court's sustaining of plaintiffs' objection to Mercer's deposition testimony relating to the impact the Hyde Report would have had on his appraisal. The trial court sustained this objection on the basis that the question called for speculation. Defendants argue Mercer was entitled to give his opinion and to consider hypothetical questions as an expert witness in appraisals. See LSA-C.E. arts. 702 and 703.
A trial court's discretion in determining whether expert testimony should be held admissible will not be disturbed on appeal absent manifest error. Pino v. Gauthier, 633 So.2d 638 (La.App. 1st Cir.1993), writ denied, 94-0243 (La. 3/18/94), 634 So.2d 858, writ denied, 94-0260 (La. 3/18/94), 634 So.2d 859.
In the instant case, Mercer was called as an expert witness in appraisals by plaintiffs to testify regarding damages suffered by plaintiffs. He is also the person who appraised the value of the subject property. Defendants' questions were, in effect, calling for him, as the one who performed the appraisal, to testify as to what he would have done had he had the benefit of the Hyde Report.
We cannot say the trial court erred in sustaining plaintiffs objection and excluding the portions of Mercer's testimony regarding what the impact of the Hyde Report on the appraisal he gave would have been. The impact the Hyde Report would have had on the value of the property is of questionable relevance in this instance, in light of the facts and circumstances of this case and the determinations made by the trial court.
The assignment lacks merit.

ATTORNEY'S FEES
Plaintiffs answer the appeal and seek additional attorney's fees from defendants for the costs incurred on appeal. Plaintiffs and defendants stipulated to the award of $7,500 at the trial level as reasonable attorney's fees actually incurred and paid by plaintiffs.
In our view, the $7,500 award was reasonable and sufficient to cover the work performed before this court as well as the work performed in the lower court. See Schollian v. Ullo, 558 So.2d 776 (La.App. 5th Cir.1990). Accordingly, we will not award additional attorney's fees.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court and decline to increase plaintiffs' award of attorney's fees. All costs of this appeal are assessed to appellant.
AFFIRMED.