liWILLIAMS, Judge.
The plaintiffs, Imperial Dry Cleaners & Laundry, Inc., and Felix and Janet Taylor, filed this breach of contract action for damages against the defendants, Imperial Carpet Cleaning & Sales, Inc., and William and Paula Taylor. The defendants filed an answer and reconventional demand alleging that plaintiffs had violated the Louisiana Unfair Trade Practices Act. Plaintiffs appeal a trial court judgment finding each party liable to the other for damages of $5,000. For the following reasons, we reverse in part, amend and affirm in part.
FACTS
Imperial Cleaners & Laundry, Inc. was a dry cleaning business owned and operated by J. Travis Taylor. The business was located in Minden, Louisiana and its trade area included Webster, Bossier, Caddo, Bienville, Claiborne and Lincoln Parishes. Two of Travis Taylor’s sons, Felix and William, were employees of the corporation. Eventually, Travis turned over full-time management of the business to the brothers. However, Felix and Will Taylor apparently could not cooperate and they decided to partition the assets of the corporation’s two divisions.
*832 On December 30, 1994, the parties executed a written contract entitled, “Partition of Assets and Agreement of Corporate Dissolution.” Under the contract, the predecessor corporation’s dry cleaning and laundry division assets were transferred to a new corporation, Imperial Dry Cleaners & Laundry, Inc., owned by the plaintiffs, Felix Taylor and his wife Janet. The disaster cleanup and carpet cleaning/sales division assets were transferred to Imperial Carpet Cleaning & Sales, Inc., owned by the defendants, Will Taylor and his wife Paula. The contract contains a covenant not to compete, which prohibits each party from performing the cleaning service provided by the other corporation for a period of two years. The agreement also states that a party violating this non-competition clause would be liable to the other for liquidated damages in the amount of $5,000. Other 12contractual provisions concern mutual “transition cooperation” and the use of common areas in the building shared by the two corporations.
In October 1995, less than one year after the contract was executed, the plaintiffs filed this suit alleging that the defendants had breached the contract’s non-competition clause by various acts, which included sending the Milton family’s fire-damaged clothes to plaintiffs’ competitor, Al-N-Way Cleaners, dry cleaning the drapes at the First United Methodist Church parsonage, taking down and rehanging drapes at the Patterson private residence, providing employees with a $15 per week cleaning allowance which could be used at a competing dry cleaner, advertising a leather cleaning service and arranging for customers’ leather clothing to be cleaned in Dallas.
The plaintiffs sought liquidated damages of $5,000 for each alleged breach, for a total of $30,000. The defendants filed an answer and a reconventional demand alleging that plaintiffs had deprived one of defendants’ customers of his cleaned clothing, thereby harming defendants’ business in violation of the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1409.
After a trial, the case was taken under advisement and the parties submitted briefs. Subsequently, the trial court issued a written opinion finding that the defendants’ arrangement with a Dallas leather cleaning company was a breach of the contract between the parties and that there “were probably other breaches by defendants.” However, the trial court stated that this inquiry was moot because the contract’s stipulated damages clause capped recovery at $5,000 for breach of the covenant not to compete, regardless of the number of violations.
The trial court also found that plaintiffs’ failure to return clothing to defendants’ customer was an unfair trade practice. The trial court’s judgment awarded each party damages in the amount of $5,000. The plaintiffs instituted this appeal. The defendants did not answer the appeal.
| «DISCUSSION
The plaintiffs contend the trial court erred in finding that plaintiffs’ recovery is limited to a total of $5,000 under the stipulated damages clause in the contract. Plaintiffs argue the contract entitles a party to recover $5,000 for each separate breach of the non-competition clause.
The parties to a contract may stipulate damages to be recovered in case of nonperformance or defective performance. LSA-C.C. Art. 2005. A stipulated damage clause fixes the amount of all damages that may be recovered for breach of contract. Nesbitt v. Dunn, 28,240 (La.App.2d Cir. 4/3/96), 672 So.2d 226. The intent of parties to a contract is determined in accordance with the plain, ordinary and popular sense of the language used. LSA-C.C. Art. 2045; Fowler v. T.L. James & Co., 621 So.2d 638 (La.App.2d Cir.1993).
In the present ease, the covenant not to compete states that the defendants agree “that for a period of two years from the effective date of this agreement, they will not engage in the business of retail and wholesale dry cleaning, laundry, alterations, drapery cleaning with take down and rehanging service ... either directly or indirectly, as an individual, agent or employee or as a partner ... of any corporation.” Evidence in the record supports the conclusion that defendants violated the non-competition clause by *833 sending Sammy Taylor’s leather jacket to Dallas for cleaning without giving plaintiffs an opportunity to do the job, and by dry cleaning the drapes at the church parsonage.
After reviewing the record, we conclude that defendants did not violate the contract with regard to the handling of smoke-damaged clothing and drapes. Witness testimony established that defendants’ disaster cleaning service involved the removal and cleaning of all damaged clothing and furniture. William Taylor testified that he took damaged clothing to Al-N-Way Cleaners because it provided a credit account, while plaintiffs required payment on delivery. Felix Taylor ^acknowledged that he stopped extending credit to defendants because of delay in receiving payment. Although the contract prohibits defendants from competing with plaintiffs’ dry cleaning business, it does not require defendants to accept less favorable credit terms from the plaintiffs for the cleaning of clothes obtained in the course of defendants’ disaster restoration service. Plaintiffs’ argument lacks merit.

Stipulated Damages Clause

Plaintiffs contend that the stipulated damages clause means a party may recover the specified amount for each separate breach of the non-competition provision. The contract provides that “in the event of the violation of the terms of this agreement not to compete by any of the parties, ... the other party would be entitled to liquidated damages in the amount of $5,000.00.” If all of the parties had intended that the stipulated damage amount was to be imposed for each separate violation of the covenant not to compete, it is reasonable to expect that language expressing such an intent would have been included in the contract. The absence of this language is an indication that the parties did not intend such an interpretation.
Moreover, given the nature of the particular breaches involved in this matter, we conclude that a stipulation fixing liquidated damages at a total of $5,000 is not unreasonable and adequately compensates plaintiffs. Stipulated damages that are reasonable will not be modified by the court. LSA-C.C. Art. 2012; Lombardo v. Deshotel, 94-1172 (La. 11/30/94), 647 So.2d 1086. Based on this record, we cannot say the trial court erred in its determination that the stipulated damages clause fixes defendants’ total liability at $5,000 for breach of the non-competition clause. Plaintiffs’ argument lacks merit.

Telephone System and Time Clock

Plaintiffs contend the trial court erred in finding that they were not entitled to compensation for the value of their one-half share of the telephone service and |6to reimbursement for paying defendants’ share of the time clock maintenance fee. The contract provides that the parties share the use and split the cost of a common telephone system and time clock. Plaintiffs argue that defendants breached the contract by threatening to change the existing telephone service.
In May 1995, William Taylor wrote a letter offering to sell his share of the telephone to Felix Taylor for $2,500. The letter further stated that if a response was not received, William Taylor would replace the system and cut the telephone lines used by plaintiffs. Felix Taylor testified that he rejected the offer and purchased a new telephone system at the price of $3,600 because he feared defendants would deprive him of the use of the business telephone service. William Taylor did not deny threatening to cut off plaintiffs’ use of the telephone.
Under the terms of the contract, both parties had an equal right to use the telephone system. Thus, defendants were not entitled to modify or remove the existing telephone service without the plaintiffs’ consent. The evidence shows that the existing telephone system was within the defendants’ control and that plaintiffs acted to purchase a new system in response to William Taylor’s threatened disruption of their telephone service. The defendants’ threat of unilateral action was a breach of the contract, which provided for equal access to the telephone system. The trial court was clearly wrong in finding that plaintiffs were not entitled to damages for this breach. After reviewing the record, we conclude that an award of $2,500 would reasonably compensate plain *834 tiffs for their interest in the original telephone system.
Plaintiffs also argue that defendants breached the contract by failing to pay one-half of the annual maintenance cost for the employee time clock. Paragraph VI of the contract requires both corporations to equally divide the cost of operating and maintaining the time clock. At trial, William Taylor acknowledged that he had not paid his share of the time clock expense. He asserted that plaintiff had Ragreed through an employee that he did not have to pay for the clock. However, the record does not contain evidence corroborating such an agreement and plaintiffs continued to request payment from defendants. Defendants’ failure to pay their share of the clock costs was a breach of the contract and the trial court was clearly wrong in finding that plaintiffs were not entitled to reimbursement. Plaintiffs are entitled to receive payment of $416.56, an amount reflecting defendants’ share of the time clock maintenance costs.
Plaintiffs contend that defendants breached the contract by paying for employee dry cleaning performed by Al-N-Way Cleaners. Two of defendants’ employees, Sarah Simms and Patricia Toelkes, testified that the original corporation had provided them with a dry cleaning allowance and this policy continued after the split of the business. Simms and Toelkes stated that they had continued bringing their clothes to Imperial Dry Cleaning until they were informed that their employer no longer had a credit account and that they would have to pay cash for their cleaning. The workers testified that they chose to take their clothes to another dry cleaner and that defendants did not tell them where to have their clothes cleaned. The evidence does not show that defendants were promoting a competing dry cleaner. Plaintiffs’ argument lacks merit.
Plaintiffs argue that defendants breached a verbal agreement to rent employee uniforms from plaintiffs. Trial testimony indicates that at some time Felix and Will Taylor discussed uniform rental. However, the record does not contain evidence to corroborate the alleged verbal agreement.
Plaintiffs contend that defendants breached the contract by failing to clean the carpet in common areas of the businesses, by destroying plaintiffs’ telephone answering tape, by allowing plaintiffs’ female employee to be sexually harassed in the common break room and by refusing to sell carpet at cost to Felix and Janet Taylor. The record shows that defendants cleaned the carpet approximately every ptwo months and that plaintiffs’ cassette tape was accidentally damaged and replaced. In addition, plaintiffs failed to show how they were damaged by the alleged employee harassment which occurred in a common break room for which plaintiffs shared responsibility. Defendants’ employee Simms testified regarding the carpet sale. Her testimony showed that the parties had not agreed to a price reflecting defendants’ cost for the carpet. Plaintiffs’ contentions lack merit.

Attorney Fees

The plaintiffs argue that they should have been awarded reasonable attorney fees. In general, a successful litigant may recover attorney fees when specifically provided for by contract. Curtis v. Curtis, 28,698 (La.App.2d Cir. 9/25/96), 680 So.2d 1327. The award of attorney fees must be reasonable based upon the degree of skill and work involved in the case. United Building Co. v. Harp, 25,852 (La.App.2d Cir. 6/22/94), 639 So.2d 349. In the present case, paragraph XII of the contract provides that a party who violates the non-competition clause shall pay reasonable attorney fees to the other party. As previously noted, defendants breached the covenant not to compete. Thus, we conclude that the trial court erred in refusing to award attorney fees to plaintiffs. After reviewing the record, we find that $3,000 is a reasonable attorney fee award in this matter.

Unfair Trade Practice

Plaintiffs contend the trial court erred in finding that they used unfair trade practices in violation of LSA-R.S. 51:1409, and in awarding damages to defendants-plaintiffs in reconvention. Any person who suffers an ascertainable loss of money or property as a result of another person’s use of an unfair or deceptive act or practice, may *835 bring an action individually to recover actual damages. LSA-R.S. 51:1409.
At trial, William Taylor testified that plaintiffs refused to return clothing to defendants’ customer, Major Forrest, until they received full payment. Defendants largue in brief that plaintiffs’ action was an attempt to harm their business and constitutes an unfair trade practice. Plaintiffs’ employee, Steve Thomas, testified that when he informed William Taylor that Forrest’s clothing was ready, Taylor responded that he did not want the clothes charged to his account at that time. Forrest did not testify at trial. William Taylor’s testimony failed to establish by a preponderance of the evidence that plaintiffs committed an unfair or deceptive act or practice or that defendants sustained any ascertainable loss of money or property as a result of the incident. In addition, defendants did not present evidence of actual loss necessary to support the trial court’s $5,000 damage award. After reviewing the entire record, we must conclude that the trial court was clearly wrong in finding that plaintiffs conduct constituted an unfair trade practice. Therefore, we reverse the award of $5,000 to defendants-plaintiffs in reconvention.
CONCLUSION
For the foregoing reasons, we reverse that part of the trial court’s judgment awarding damages of $5,000 to defendants-plaintiffs in reconvention. We affirm that part of the judgment awarding stipulated damages of $5,000 to plaintiffs for breach of contract. In addition, we amend the judgment to award plaintiffs $2,500 for their interest in the telephone system and $416.56 for one-half of the time clock maintenance cost. We further award plaintiffs attorney fees in the amount of $3,000. Costs are assessed to the appel-lees, Imperial Carpet Cleaning & Sales, Inc., William Taylor and Paula Taylor.
REVERSED IN PART; AMENDED AND AFFIRMED IN PART.